MEEKS v. GRAYSONIA, NASHVILLE & ASHDOWN RAILROAD COMPANY.

Opinion delivered May 25, 1925.

1. CARRIERS—INSTRUCTION IGNORING ISSUE.—Where plaintiff who was waiting in defendant's station while the local mixed freight train on which she was traveling was being switched, desiring to use a toilet, and seeing none in the station, returned to the caboose and was injured while standing in the aisle by an alleged violent jerking of the train, an instruction to find for the defendant if plaintiff failed to inquire for the toilet at the station *held* erroneous as ignoring the issue as to the alleged violent jerking of the train, the negligence complained of.

2. CARRIERS—PROXIMATE CAUSE OF INJURY.—Where plaintiff, who had been waiting in the station while the local mixed freight train on which she was traveling was being switched, desiring to use a toilet, and seeing none about the station, returned to the caboose, and was injured, while standing in the aisle, by the alleged violent jerking of the train, *held* that her failure to ask the station agent

concerning the station toilet was not the proximate cause of the injury.

3. NEGLIGENCE—PROXIMATE CAUSE OF INJURY.—Unless the negligence of defendant proved was the proximate cause of her injury, there can be no recovery.

4. NEGLIGENCE—PROXIMATE CAUSE.—To warrant a finding that negligence was the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence charged, and that it ought to have been foreseen in the light of the attending circumstances.

5. CARRIERS—MIXED TRAINS.—While local freight trains are allowed to carry passengers, the primary purpose of such trains is the transportation of freight, and passengers electing to ride on such trains are chargeable with notice of such fact.

6. CARRIERS—OPERATION OF MIXED TRAINS.—It is matter of common knowledge that jolting and jarring are incident to the operation of freight trains, and the company is bound to exercise only the highest degree of care that is usually and practically exercised consistent with the operation of trains of that nature.

7. CARRIERS—OPERATION OF MIXED TRAINS.—It is common knowledge that a good deal of switching is necessary when local freight trains stop at a station, and this fact, together with the age and experience in traveling of the passenger, is to be considered in determining whether the passenger was negligent in standing in the aisle of a caboose while the train was being switched.

8. CARRIERS—PRESUMPTION OF NEGLIGENCE.—Under Crawford & Moses' Dig., § 8562, proof of an injury to plaintiff, caused by the operation of a train on which she was a passenger establishes a *prima facie* case of negligence against the carrier.

9. CARRIERS—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.—Where plaintiff, an elderly lady, was injured while standing in the aisle of a freight caboose, the question whether she was guilty of contributory negligence *held*, under the evidence, to be a question for the jury.

Appeal from Pike Circuit Court; *B. E. Isbell,* Judge; reversed.

STATEMENT OF FACTS.

Mary Meeks sued the Graysonia, Nashville & Ashdown Railroad Company to recover damages by reason of being violently thrown to the floor of a car in which she was riding as a passenger, on account of the negligent operation of said train by the defendant. She alleged specifically that the defendant's negligence con-

sisted in the failure of its agents or employees to couple its train in a reasonably safe manner to the coach in which she was rightfully riding as a passenger, and to exercise such care in the operation of the train as required by law.

Mrs. Meeks was a witness for herself. According to her testimony, she lived at Mineral Springs, Arkansas, and is eighty-two years of age. On the 21st day of September, 1923, she boarded one of the defendant's local freight trains at Murfreesboro, Arkansas, to go to her home at Mineral Springs, Arkansas. She had purchased a ticket. After the train reached Nashville some one told her that the train would be there quite a while, and it would be better for her to go to the depot and stay there until the train was through with its switching and ready to depart. The persons who advised her to do this went to the depot with her. After Mrs. Meeks had remained in the waiting-room at the depot for a while, she went back with a colored woman to the caboose in which she had been riding. She was obliged to go, or she would not have gone. She had gone back to the coach to attend to a call of nature, because there was no toilet at the depot. After she had come out of the toilet in the caboose she stood in the aisle, talking to the negro woman, for not longer than five minutes, and was then thrown down by other cars being propelled against the caboose. She was asked what caused her to be thrown down, and answered: "I don't know; the cars came together. I had started to a seat to sit down, and I was lifted clear up off of the floor, and it threw me down." She then described her injuries. She testified that she had enjoyed good health all of her life and was in good physical condition at the time she was injured. On cross-examination she stated that she looked for a toilet before leaving the waiting-room, and could not find any. She went to the window of the room where the agent usually stayed, but did not see anybody. She then went to the caboose with the negro woman, as stated in her examination in chief. One of the trainmen had

carried her baggage from the caboose to the waiting-room. The negro woman told her that the train was nearly ready to start, and carried her baggage back for her when they went to the caboose. Her fall caused a fracture of the long bone of the leg that connects with the hip.

According to the evidence of the train crew, there was no sudden or violent jar or jolt when the train was coupled with the caboose in which she was standing at the time she was injured. One of the train crew had advised her to go to the depot and stay in the waiting-room until the train was ready to depart. The members of the train crew supposed that she was still in the waiting-room when the train was coupled to the caboose.

The station agent testified that toilets were provided by the railroad company for white and colored passengers. He denied that Mrs. Meeks made an application to him on the day in question for information concerning the toilet.

The jury returned a verdict in favor of the defendant, and from the judgment rendered the plaintiff has duly prosecuted an appeal to this court.

*Featherston & Featherston* and *Tom W. Campbell,* for appellant.

*J. G. Sain,* for appellee.

HART, J., (after stating the facts). Counsel for the plaintiff ask for a reversal of the judgment because the court erred in giving instruction No. 5 to the jury at the request of the defendant. The instruction reads as follows: "The court instructs the jury that the law requires railroad companies to furnish toilets for its patrons, and that the plaintiff is charged with knowledge of that fact, and that, if plaintiff neglected or failed to ask the agent of the defendant for a key or location of the toilet, and, by reason of her failure or neglect to get this information from the agent of the company, but acted on her own volition and thereby received an injury, then the plaintiff would be guilty of negligence, and you will find for the defendant."

In the first place, this instruction entirely ignores the theory upon which the plaintiff predicated her right of action in this case. In her complaint she alleges that she was injured by the negligence of the defendant in the operation of its train upon which she was riding as a passenger. The particular act of negligence complained of was that the defendant negligently coupled its train to the coach in which she was riding as a passenger, and that she was violently thrown to the floor.

Moreover, the fact whether or not the defendant had a toilet at the station, and whether or not the plaintiff asked the agent for a key to said toilet, was not the proximate cause of her injury. It cannot in any sense be said that the failure of the railroad company to comply with the statutory requirement of maintaining water-closets at its passenger depots was shown to be the natural and immediate cause of the injury to the plaintiff.

The rule is well established in this State that, in an action for personal injuries, although the defendant may be shown to have been negligent in some manner, yet, unless the negligence so shown is the proximate cause of the injury complained of, no recovery can be had on account of said injury. It has been uniformly held that, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence and that it ought to have been foreseen in the light of the attending circumstances. *Pittsburg Reduction Co.* v. *Horton*, 87 Ark. 576; *St. L. & S. F. R. Co.* v. *Whayne*, 104 Ark. 506; *St. L., Kennett & S. E. Rd. Co.* v. *Fultz*, 91 Ark. 260; *Hays* v. *Williams*, 115 Ark. 406; and *Bona* v. *Thomas Auto Co.*, 137 Ark. 217.

It is manifest that the failure of the defendant to maintain toilets at its station, as required by statute, was not the proximate cause of the injury to the plaintiff, and that it could not have foreseen that its failure in this respect would have caused the injury complained of by the plaintiff.

The allegation of the complaint is that the defendant was guilty of negligence in the operation of its train upon which the plaintiff was a passenger and thereby caused her injury. The particular act of negligence complained of was that the other cars in the train were backed against the caboose in which the plaintiff was riding with such violence as to lift her up and throw her down on the floor. Instruction No. 5 wholly ignored the plaintiff's theory of the case, and made it the duty of the jury to find for the defendant upon facts which were not the proximate cause of the injury. Hence it was necessarily prejudicial to the rights of the plaintiff.

In view of another trial, we deem it necessary to state that the degree of care required in the operation of freight trains which, by law, may carry passengers, was not correctly stated in the instructions given at the request of the plaintiff. While local freight trains are allowed to carry passengers, the primary purpose of such trains is the transportation of freight. Their equipment therefore is adapted to such business, and those of the traveling public electing to ride on mixed trains are charged with knowledge of such facts. It is a matter of common knowledge that jolting and jarring are incident to the operation of freight trains, and therefore the company is bound to exercise only the highest degree of care that is usually and practically exercised consistent with the operation of trains of that nature.

In this connection it may be also stated to be a matter of common knowledge that a good deal of switching is necessary when local freight trains stop at a station, and this fact, together with the age and experience in traveling of the passenger, are to be considered in determining whether she is guilty of contributory negligence in standing in the aisle and talking to a fellow traveler. *St. L. I M. & S. R. Co.* v. *Brabbzon,* 87 Ark. 109, and cases cited; *St. L. I. M. & S. R. Co.* v. *Hartung,* 95 Ark. 220; *Rodgers* v. *Choctaw, Okla. & Gulf Rd. Co.,* 76 Ark. 520; and *Pasley* v. *St. L. I. M. & S. R. Co.,* 83 Ark. 22.

In *Pasley* v. *St. L. I. M. & S. R. Co.*, 83 Ark. 22, it was held that, while it is not practical to operate freight trains without occasional jars and jerks calculated to throw down and injure careless and inexperienced persons standing in the car, jars of great, unusual and unnecessary violence would be evidence of negligence on the part of the trainmen.

The injury to plaintiff was caused by the operation of the train of the defendant, and, under our statute, proof of this fact made a *prima facie* case of negligence against the railroad company. Crawford & Moses' Digest, § 8562, and cases cited in foot-note. The defendant attempted to overcome the *prima facie* case in favor of the plaintiff by introducing witnesses who testified that the coupling of the rest of the train to the caboose in which the plaintiff was standing at the time she was hurt was not accompanied by any unusual jolt or jar, and in fact was a very easy coupling.

On the other hand, the evidence for the plaintiff tends to show that, while she was eighty-two years old, she had been in good health all of her life, and was a sturdy old woman. She had left the closet, and had only been standing in the aisle a few minutes when the accident occurred. She was talking to a negro woman who had conducted her from the station to where the caboose was standing. As the plaintiff expressed it, she had started to her seat when she was "lifted clear up off the floor" and thrown down when the rest of the train was coupled to the caboose.

The jury might have legally inferred from the evidence for the plaintiff that the train was coupled together with a jar of great, unnecessary and unusual violence. If the evidence for the plaintiff was legally sufficient, if believed by the jury, to warrant a verdict in her favor, we are not concerned upon appeal as to where the weight of the evidence was. This was a question for the trial court in determining whether or not a new trial should be granted. *St. L. S. W. Ry. Co.* v. *Ellenwood,* 123 Ark. 428.

It is true that the plaintiff would not likely have been hurt if she had been in her seat, but, under the circumstances as detailed by her, the question of whether she was guilty of negligence was a proper one to have been submitted to the jury.

· For the error in giving instruction No. 5 at the request of the defendant the judgment will be reversed, and the cause remanded for a new trial.