MISSOURI PACIFIC RAILROAD COMPANY *v.* RICHARDSON.

Opinion delivered March 28, 1932.

*Thos. B. Pryor* and *H. L. Ponder,* for appellant.

*John E. Miller* and *C. E. Yingling,* for appellee.

SMITH, J. Appellee recovered a substantial judgment to compensate an injury which he sustained as he was walking across the tracks of the defendant railroad company in Bald Knob, along Elm Street, which crossed the tracks, when he stepped on a small rock or piece of gravel, which caused his ankle to turn and twist his knee in such a manner as to break the cartilage in his knee cap.

We copy from the record his statement as to the manner in which he was injured: "When I got there (at the crossing), there was a gravel train, a work extra, that was on the crossing, and they had cut, I suppose, the Main Street crossing at the old depot. After they cleared the crossing probably six or eight feet, I started across. The work train had gone in on the passing track and let the Memphis train go out on the north Y, and let it connect to the coaches going south. They were spreading ballast, I think, between Bradford and Oliphant. The work extra train began to cut the crossing and let the traffic over, and the various vehicles that had been tied up there started across. I started across, and I stepped over the first pile of gravel that they strowed there, and I stepped over it,

which was about eighteen inches from the rail. I got over that with my left foot, and I stepped with my right foot to get over, and just as I started to make that step this work extra stopped. When they stopped, it created a noise, and, of course, I looked up to see what the noise was, and the car started back. I was standing between the rails, and, before I could get back and when I stepped over, I stepped on this rock."

Appellee described the rock upon which his foot turned as "a liver shape or a kidney shape gravel, a large sized gravel." He stated that "on the outside of the road (where he was injured) there was quite a stretch of them (gravel)." He also testified that the railroad company was using the gravel in raising its tracks, and that dump cars of two kinds were employed. One was a "center dump car," which so opened that the gravel which it contained would be spread in the center of the track between the rails. The other was a "side dump car," which so opened as to spread the gravel it contained on the outside of the rails.

He was asked: "How long had there been rock on that crossing?" And he answered: "At various times there would be a little in spots there, but that evening (the day of the injury) was the only time I ever seen that amount of rock there." He was asked: "How large was this particular gravel?" and he answered: "Something like as big as my fist."

He was interrogated in regard to a written statement he had signed relating to his injury, and, on his motion, this writing was introduced in evidence. This statement contained the recital that "This rock, in size, was something like a three-inch rock, such as would fall off a gravel train," and the further statement that "I remember that I saw these rocks scattered along before I reached there, but the particular rock that caused my ankle to turn had rolled off a little ways from the bunch."

Appellee had previously been employed by the railroad company for seventeen years in the bridge and building department, and was thoroughly familiar with

the work in connection with which the gravel was being used.

A witness introduced by appellee testified that some of the gravel were as large as eggs, and he had noticed them along the track for a week or ten days before appellee was injured.

The cause was submitted to the jury under instructions which declared it to be the duty of the railroad company to maintain its crossing in a safe condition for use by the public. The duty of railroads in this respect has been frequently defined in numerous decisions of this court, and no useful purpose would be served by reviewing them, as the instructions appear to conform to the law thus announced.

We are of the opinion, however, that appellee's injury was a mere accident for which the railroad company should not be held liable. The work in which the railroad company was engaged—that of spreading ballast—was both proper and necessary, and was in progress at the time of appellee's injury, and the probability that a pedestrian would be injured by the presence of one of these small stones appears to us to be too remote to predicate a cause of action thereon.

It has been frequently stated by this and other courts that, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. *St. Louis, K. & S. E. R. R. Co.* v. *Fultz,* 91 Ark. 260, 120 S. W. 984; *Ultima Thule Ry. Co.* v. *Benton,* 86 Ark. 289, 110 S. W. 1037; *Helena Gas Co.* v. *Rogers,* 104 Ark. 59, 147 S. W. 473; *St. Louis, I. M. & S. Ry. Co.* v. *Copeland,* 113 Ark. 60, 167 S. W. 71; *Miller* v. *M. P. Ry. Co.,* 9 La. App. 477, 121 So. 241; *Meeks* v. *Graysonia, N. & A. R. R. Co.,* 168 Ark. 966, 272 S. W. 360.

If it be said that the jury was warranted in finding that it was negligence for the railroad company to permit particles of gravel to fall from its train, we are, neverthe-

less, of the opinion that the probable injury of appellee was not a consequence which ought to have been foreseen, and there is no liability unless the testimony suffices to sustain a finding that such a consequence should have been anticipated.

In the case of *Lee* v. *Central Railroad & Banking Co.*, 86 Ga. 231, 12 S. E. 307, it was said by the Supreme Court of Georgia: "It cannot be incumbent on railroad companies, or any one else, in such a world as this, to keep the whole face of the earth on which servants and employees are to execute their functions clear of every object that may cause an employee to slip up or be thrown down. Such a rule would require that farmers should keep their premises clear of corncobs; for a cob, when stepped upon, may roll under the foot and produce a fall. So of small stones, and sometimes sticks or other rubbish."

In the case of *Atchison, T. & S. F. Ry. Co.* v. *Calhoun,* 213 U. S. 9, 29 S. Ct. 321, the Supreme Court of the United States quoted from Pollock on Torts, 8th ed., 41, as follows: "If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things."

We conclude therefore that appellee's injury was the result of a mere accident for which the railroad company should not be held liable.

The judgment must therefore be reversed, and, as the case has been fully developed, it will be dismissed. It is so ordered.