St. Louis-San Francisco Railway Company *v.* Burns.

4-2817

Opinion delivered January 23, 1933.

*E. T. Miller* and *Warner & Warner,* for appellant.
*Partain & Agee,* for appellee.

Butler, J. This action was brought by the appellee against the appellant in the circuit court of Crawford County to recover damages for personal injuries alleged to have been caused by an injury to his eye while cutting a cotter pin with a chisel and hammer at the shops of appellant company. There was a verdict and judgment for the amount sued for, from which is this appeal.

Several questions are presented which we find it unnecessary to decide, as it is our opinion that the first assignment of error urged by the appellant is well taken, and our determination of that question disposes of the case.

It is claimed, and we agree, that there was no actionable negligence shown by the evidence, and the court should have given the peremptory instruction requested by the appellant. In arriving at this conclusion, we do not overlook the rule that the evidence on appeal should be viewed in the light most favorable to the appellee and given the greatest weight to which it is entitled, if by so doing the verdict may be sustained. The appellee, Burns, at the time of the injury was at work in appellant's shops engaged in repairing a locomotive with the help of one O. N. Meeks. These two were the only persons present at the time of the injury and the only witnesses testifying regarding the occurrence. Their testimony is not in conflict except in one particular.

The evidence, which is undisputed, establishes the following facts: Appellee was 29 years old and his position with the appellant was that of a "second-class mechanic", in which position he had worked for approximately five years. Meeks was his helper at the time of the accident, which occurred during the night, as they were preparing to put truck wheels on the engine. Meeks was working under the direction of the appellee, and was told to place a cotter pin on the rail and hold it there while Burns cut off the end of it. The cotter pin was a round pin about three or three and a half inches long and about three-eighths of an inch in diameter, with a slit down the middle so that when the pin was placed through a hole in the shaft the protruding ends of the pin could be bent back on either side and prevent it from slipping out. Meeks testified that he was holding the pin with his hand with the end lying on the rail as he had been directed to do; that he did not turn the pin at all, and that it had not moved in any way at the time the appellee struck the final blow cutting off a portion of the pin, which flew out and

injured him. Meeks stated that as the blow descended he turned his head to one side.

Appellee testified, in substance, that he directed the pin to be placed and held so that the slit in it would rest upon the rail, and, when it was so placed and held, he adjusted the cutting edge of his chisel on the pin and fixed it in place by striking with his hammer two light blows upon the head of the chisel, thus "setting" it. He then prepared for the blow by which he proposed to sever the end of the pin, and stated that, as the hammer was falling, "it seemed as if something attracted the attention of Meeks, and he turned his head, and at the same time the pin was turned"; that he had already started down with the blow, and it was impossible to stop it then. At this time he was standing down in a pit, and, when the pin turned as he delivered the blow, one side of it was cut off, which flew out, striking him in the eye; that the chisel and hammer were his own tools, and that he had had five years' experience and understood the work.

The question presented by this evidence is, does it show that Meeks, while helping the appellee, failed to exercise ordinary care? No fixed rule can be stated as to what constitutes "ordinary care," except that it is that degree of care which an ordinarily prudent person would exercise under the circumstances of the case. Care in one case would be negligence in another, and *vice versa.* That degree of care must be exercised commensurate with the danger reasonably to be anticipated. Therefore, ordinary care is a relative term, dependent upon the facts and circumstances of each particular case, and the degree of care required must always be measured by the exigencies of the case under consideration. *Meeks* v. *Graysonia N. & A. R. Co.,* 168 Ark. 966, 272 S. W. 360; *Evans* v. *B. L. & A. Ry. Co.,* 147 Ark. 28, 227 S. W. 257; *Murphy* v. *Clayton,* 179 Ark. 225, 15 S. W. (2d) 391. The chisel was set in the pin by two preliminary blows, and it is difficult to see how the pin could turn without turning the chisel also, or indeed how the pin could turn except by some considerable effort, as the chisel was set in it and held in

place by Burns as he was striking the head of it. This would seem more sufficient to hold the pin steady than the hold Meeks had upon it, since it must be remembered that the pin was round, only three-eighths inch in diameter and not more than three or three and one-half inches long. A considerable portion of the pin must have been resting on the rail, so that the projecting end which was held by Meeks could not be held very firmly, and without the support of the chisel the pin was likely to turn by a very slight muscular contraction. The fact that Meeks turned his head as the blow descended is not disputed, but that he was not attending to his business, because of his attention being attracted by something else, as suggested by the appellee, is not warranted, for there are no circumstances related which would cause his attention to be attracted elsewhere. It appears to us that the turning of his head was the natural and instinctive act of one in his position, for his head and face could not have been very far from where the impact of the hammer upon the chisel would fall.

There is no contention that Meeks wilfully moved the pin, and the mere fact that he turned his face aside as the blow was descended does not seem to us to be sufficient to show that he was failing to exercise ordinary care. The cutting off of the end of the cotter pin was a simple operation, attendant with no particular danger, although, in the light of common experience, it was to be expected that the end of the pin, when cut by a violent blow, would fly off some appreciable distance. Ordinarily this would be attended by no particular danger, for it is not to be doubted that, if the fragment had struck the person of the appellee anywhere else but in the eye, no injury would have resulted. That it did strike his eye was a remote mischance which no one contemplated, or else the appellee, who was experienced, would have taken some precautions other than shown to protect his eyes from flying fragments.

In the case of *Booth & Flynn Co.* v. *Pearsall,* 182 Ark. 854, 33 S. W. (2d) 404, the plaintiff sued for personal

injuries sustained while working for the defendant by being struck in the eye by a sliver broken from an iron gas pipe. While the plaintiff was bending over a metal pipe, a fellow-servant working next him threw a block of wood from his shoulder on the pipe, causing a sliver to fly off and strike the plaintiff in the eye. In commenting upon the testimony, it was said: "It cannot be said that, even though the sliver which struck the plaintiff in the eye came from the iron pipe, when his fellow-servant threw down the block of wood on it, the master or fellow-servant was guilty of negligence. The work was being done in the ordinary and customary way of doing such work, and there is nothing to show that it was not reasonably safe. * * * It was an unanticipated and unexpected occurrence which no reasonable person would have likely foreseen." It is a matter of ordinary observation that frequently there is some danger attendant upon the most common and ordinary transactions, but the care required is only to provide against such dangers as ought to be foreseen in the light of the attendant circumstances, and the ideal "prudent person" will therefore not neglect what he can foresee as probable nor divert his attention to the anticipation of events barely possible, but will order his conduct by the measure of what appears likely in the ordinary course of events. *Walloch* v. *Heiden,* 180 Ark. 844, 22 S. W. (2d) 1020; *Booth & Flynn Co.* v. *Pearsall, supra; Mo. Pac. Rd. Co.* v. *Medlock,* 183 Ark. 955, 39 S. W. (2d) 518; *Mo. Pac. Rd. Co.* v. *Richardson,* 185 Ark. 472, 47 S. W. (2d) 794.

It may be that Meeks could have held the pin more firmly and prevented its slightest movement, had he foreseen the consequences, but were they such as would reasonably be expected to probably flow from a slight turning of the pin? We do not think so. Hence, although he might have exercised greater care, it does not appear that he should have ordered his conduct by a measure of prudence against every possible risk, but only as to what would ordinarily likely occur.

From the views expressed it follows that the judgment of the trial court must be reversed, and, as the cause appears to have been fully developed, it will be dismissed. It is so ordered.