RILEY *v.* MOTOR EXPRESS, INC.

4-4545

Opinion delivered March 8, 1937.

*Tom F. Digby* and *Rowell, Rowell & Dickey,* for appellant.

*Reinberger & Reinberger* and *Isgrig & Robinson*, for appellee.

GRIFFIN SMITH, C. J. Appellants sued Motor Express, Inc., for $30,435, and a jury found for the defendant. It is alleged that appellee's driver negligently parked and left a truck and trailer on the highway, and that W. Mason Moore, driving a Chevrolet car, ran into the rear of the trailer and was killed. Appellants are Pat H. Riley, C. C. Moore and Maggie Moore. Riley, as administrator, asks $15,000 as compensation for the death of his intestate and $435 to cover damages to the car. Mr. and Mrs. Moore, father and mother of Mason Moore, asked $15,000 to compensate for loss of the companionship of their son, and for the support he had promised.

The case is being affirmed because there should have been a directed verdict for the defendant.

Mason Moore was killed on the morning of November 18, 1935, on the Little Rock-Pine Bluff highway. Appellee's agent, H. C. McKenzie, left Little Rock at five o'clock, driving a loaded truck, to which a trailer was attached. When approximately three miles from Pine Bluff trouble developed from a "stripped" bearing, and McKenzie coasted to a stop. It is alleged in the complaint that the accident happened about 6:30 a. m.

The administrator testified: "On the morning of the 18th I arose about 6:15. The atmospheric condition was foggy. I got to the scene of the accident about an hour and a half after it occurred, and it was still foggy. The truck and trailer were on the side of the highway on the concrete. The road was 18 feet wide. They had not been moved. Truck was on south side of concrete and wheels of the truck were not on the shoulder. The north lane of the road was clear. I do not know what the conditions were at the scene of the accident at 6:30. The road at the scene of the accident runs kind of southeast and northwest. East the road is straight between a quarter and a half mile, and west the road is straight approximately a quarter of a mile."

J. W. Bingham, Jr., an employee of the State Highway Department, testified for plaintiff that the paving is twenty feet wide where the wreck occurred, with a five-foot shoulder on each side. "It was 175 feet from the truck to a place pointed out to me as being the place where a flare was set in the center of road at rear of truck."

M. C. Hollis lives at Pine Bluff, and, on the morning of November 18, left Pine Bluff with Fred Stalcup for Little Rock. "I left about six o'clock or a little after. It was reasonably dark, but day was breaking and I had lights burning on my car. I was on the front seat of the car with Mr. Stalcup, who was driving. As we were driving up the road Stalcup saw lights on a car coming and then saw the truck parked on the side of the road. We were proceeding slowly. As we approached the parked truck, within distance from witness chair to courtroom door, the impact occurred. Stalcup had pulled his car over, practically off the concrete, to avoid any possible collision. The first I knew the boy (Moore) came down the road. He evidently saw the flare and turned over on one side of the road to pass it, and the next instant he hit the back end of that truck. His body came out of the car and fell right in front of our car. * * * His face was clear as could be and there wasn't a mark on it, or any indication of any dissipation—no odor or signs of intoxication. There were no lights on the front or rear of the truck, and no flare was burning east of the truck. A flare was burning at the rear of the truck, some 60 or 75 steps from the back end of the truck. The lights on Moore's car were on the north side of the road when he passed around the rear flare. As Moore passed the flare, he evidently saw the lights on our car and immediately turned back to the south side of the road and came into contact with the parked truck. The truck was headed toward Pine Bluff, and I saw it approximately 100 yards before I reached it. Our car stopped some 25 feet before reaching the truck, and Moore's body fell about ten feet in front of our car."

Fred Stalcup testified in substance as follows: "I was with Mr. Hollis on the morning of the 18th of No-

vember. After I got out of my car I saw a flare burning some 40 or 50 yards beyond the car toward Little Rock, behind the truck. When we approached to within 30 or 40 yards of the truck I saw Moore's car coming, and also saw a dim outline of the truck. When we came to within 20 or 30 yards of the car I saw Moore turn around the flare and then turn back behind the truck, and I saw that he was going to hit the truck. Moore was on my side of the road when he passed the flare, and turned back on his (right hand) side of the road, and the impact with the truck occurred. There were no lights on the front or rear of the truck, and no one was there with it. Part of the truck was on the shoulder of the road and part was on the concrete. There wasn't sufficient room north of the truck for two cars to pass. I stopped my car eight or ten feet before reaching the truck and pulled off on the shoulder so that the oncoming driver could pass in the event he attempted to do so. The right hand rear corner on the truck was on the concrete. I couldn't tell how fast Moore was coming, but as he passed the flare, as a mere guess, I would say he was traveling at an ordinary rate of speed, 35 miles an hour.''

The most that can be said in favor of appellants' testimony is that the driver parked in such manner as to leave the north side of the highway entirely clear; that it was about daylight and visibility was not good, and that instead of keeping the truck lights burning, a flare was placed 175 feet to the rear of the truck and trailer.

It is contended that the distance the flare was placed to the rear of the truck is evidence of negligence, and it is pointed out that Moore's acts of turning to his left around the flare, and then cutting back to the right, show that he was misled.

Crawford's Digest of Arkansas Decisions contains many citations wherein negligence is defined. In *Bizzell v. Booker,* 16 Ark. 308, it was said that ''Negligence * * * depends upon the circumstances surrounding the party at the time.'' In *St. Louis I. M. & S. R. Co.* v. *Hecht,* this language is found: ''Negligence, in a legal sense, is no more nor less than this, the failure to observe, for the

protection of the interest of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury." In *Evans* v. *Blytheville, L. & A. S. R. Co.,* 147 Ark. 28, 227 S. W. 257, the court said that "The degree of care must always be measured by the exigencies of the particular case." As expressed in *Coca-Cola Bottling Co.* v. *Shipp,* 174 Ark. 130, 297 S. W. 856, "Negligence is doing something a person of ordinary prudence would not do, or failure to do something that persons of ordinary prudence would do, under the circumstances." Still later (*St. Louis-San Francisco Ry. Co.* v. *Burns,* 186 Ark. 921, 56 S. W. (2d) 1027) it was said that "The degree of care required of a person is only to provide against such dangers as ought to be foreseen under attending circumstances."

If appellee violated any of the duties of care embraced within the definitions, *supra,* and if such negligence was the proximate cause of Moore's death, appellants might be entitled to recover, but it is our opinion that appellee's agent did nothing that a man of ordinary prudence would not have done, and that he did not neglect to do what a person of ordinary prudence should have done. Witnesses for appellants disagree as to whether all of the truck and trailer was on the concrete. It is admitted that a rear flare was burning, and it is known that Moore saw the flare and responded to the very purpose it was intended to serve, for he turned to his left and went around it.

In placing the flare 175 feet from the truck, was appellee guilty of negligence? In determining what a reasonable man would do or fail to do under stated conditions, it is competent to point to the actions of others under similar conditions. Appellants' witness Hollis, driving with Stalcup, saw lights on a car coming (which was Moore's), and Stalcup drove at least partly off the paving. Hollis saw the truck from a distance of 100 yards. Stalcup, when 20 or 30 yards from the truck, saw Moore. His estimate was that even while passing the danger signal Moore was traveling 35 miles an hour. The substance of all testimony on behalf of appellee was that

the truck and trailer were parked partly on the concrete and partly on the shoulder.

H. C. McKenzie: ''On the morning of November 18 I left Little Rock about five o'clock. The trailer and truck were connected by a fifth wheel. They were about 6½ feet wide. When I got to within two or three miles of Pine Bluff a bearing on the left rear wheel 'stripped,' destroying the pulling power. I coasted off the concrete as far as I could, the right wheels stopping two or three feet off the pavement. I then put out flares about 100 feet in front and in the rear of the truck and lighted them. Then I sat there until a man came along and took me to Pine Bluff. I was not present when the accident occurred, but returned later. It was light enough to see, and I had been driving without lights a short distance before the axle gave way. When I returned to the truck the rear flare was still burning, but the front flare had been knocked over, and was out. The flares could be seen a long way. The right-hand wheels were two or two and a half feet off on the shoulders. There were some mail boxes there that prevented me from getting off any farther, but all the wheels on the right were off the pavement. It was about 6:15 when the truck broke down. I turned my lights out four or five miles back before reaching the place where the accident happened, and when the truck broke down I put the flares out because it is a regulation of the company, and for other folks' safety. I did not turn on the truck lights when it broke down, but stayed with it ten or fifteen minutes. One car passed me, but the second one picked me up. The first car to pass did not have lights on, but the second one did. Not over three feet of the truck or trailer were on the concrete at any point.''

A. J. Hamilton, Jr.: When rounding a curve he saw some flares burning and saw the truck and one or two cars parked around it. At the time he first saw the truck and flares he was not quite a quarter of a mile away. There was sufficient light to enable him to see the truck, but it was not daylight. Mr. Pyron: The truck and trailer together were 25 feet long, and the trailer 6 feet, 9 inches wide. W. A. Brewster: Was

with A. J. Hamilton, Jr. There was visibility enough when they turned into the straight-of-way to see the car parked in front of him. He stepped off the distance to the back flare, and it was 100 to 120 feet. Truck was parked off the pavement as far as it could be without getting on loose gravel. R. W. Cargile: Was employed by the State Highway Department. Truck was at least 2½ feet over on the shoulder. Wheels of the trailer were back of the trailer on the shoulder. The flare at rear of trailer was of regulation design, similar to those used by highway department. Leo McCurdy: Was an employee of highway department. Right-hand wheels of truck were off the shoulders approximately 2½ feet from the pavement, with trailer rather diagonally, with 50-degree angle, across pavement. Right-hand side of truck was clear of the highway. Arthur Hankin: Was engaged in rural mail service at Pine Bluff, but lived near highway. Heard crash and from his house saw bulk of the vehicles. Truck was parked over on the right-hand side; "evidently driver of truck had driven as far over to the right as it was safe to go." Clarence Allen: Truck and trailer were on right-hand side of road; headed toward Pine Bluff. O. A. Burge: Was employee of highway department. Right-hand side of truck was off highway. About half of truck was on the shoulder, but trailer was pulled at about a 45-degree angle with the highway. Charlie Henry: Truck and trailer were parked "about 4 feet over on shoulder of the road and extended over the highway about 2½ or 3 feet. If the truck had gotten over any farther it would have gone in ditch." Erwin Finkbeiner: Passed truck about six o'clock, which was before the accident. Flare was burning about 200 feet from the rear of truck. Truck and trailer were parked parallel with highway, neither angled out towards center of highway. Did not have to get off highway to pass. Sam Bass: From a distance of 200 yards saw parked truck; could see about a quarter of a mile. "I saw the car coming, and just as it got there it struck the back end of this trailer. One side of the truck was parked off the shoulder. I saw both the flares, one in front and one to the rear." Witness had been con-

victed of grand larceny and "worked for the state at Cummins for about four months." Leon Kimmell: At time of accident was about 450 feet in front of truck, but could not actually see collision because the truck was between him and the car that struck it. Left wheels of truck were parked on pavement and right wheels were on the shoulder of the road, and "as well as I can remember the wheels of the trailer were knocked south when the car hit the trailer; the north wheels of the trailer were on the concrete, possibly 3 feet." T. N. Embry: Lives near highway, about 150 yards from scene of accident. Truck was parked "either just off the concrete, or just on the edge of it." W. H. Greenwood: Passed truck before accident happened. "Some part of truck was on the highway, but the right side wheels were on the shoulder, and it was parked parallel with the highway. No flares had been set out at that time. It was light enough for me to see the truck at a distance of about 300 yards or more. A tail light was burning on the rear of the truck."

The failure of appellants to show negligence entitled appellee to a directed verdict.

Affirmed.

HUMPHREYS and MEHAFFY, JJ., dissent.