St. Louis-San Francisco Railway Company *v.* Bryan.

4-4886

Opinion delivered January 17, 1938.

*J. W. Jamison* and *Warner & Warner,* for appellant.
*Partain & Agee,* for appellee.

Baker, J. This suit to recover damages for injuries alleged to have been suffered on September 25, 1935, October 28, 1936, and November 6, 1936, three separate and distinct occurrences, was begun December 15, 1936.

After the development of the suit by the introduction of all evidence, as we understand, the appellee elected to dismiss or take nonsuit as to the causes of action alleged to have occurred on October 28, 1936, and on November 6, 1936.

The first action proceeded to a verdict and judgment for $3,000, from which is this appeal.

It will, therefore, not be necessary to consider any matters not related to the one occurrence alleged to have taken place September 25, 1935. The complaint in regard thereto is as follows:

"That on September 25, 1935, at about 10 o'clock a. m., the plaintiff was carrying and helping to carry an old crosstie taken from the roadbed of said railway; that he was carrying one end of said tie and James T. Perryman, a servant, agent and employee of the defendants, was carrying the other or front end of same; that the plaintiff was carrying said tie, as in the exercise of ordinary care he should have done, with both hands. But notwithstanding the fact that said tie was partially decayed and rotted, the said James T. Perryman was carelessly and negligently carrying his end of said tie with one hand, and as he was so carrying same said old and decayed tie split in two from end to end and the half of said tie which said Perryman was not holding securely fell to the ground with great force and violence, and since the plaintiff was walking behind said tie and going forward with same being carried in front of him, the end which he was carrying jabbed him suddenly and violently in his right side, injuring him, as hereinafter set out, said injuries being caused by the carelessness and negligence of the said James T. Perryman in holding said tie as aforesaid and in not holding same securely, though he knew, or in the exercise of ordinary care on his part could and should have known, that said tie was old, worn and partially decayed and likely to split and fall if not held properly."

The most favorable testimony for appellee was that given by himself. He was thirty-two years old, had worked occasionally, or as needed, for the railroad, since May, 1933. At the time of the alleged injury they were moving old ties off of the right-of-way, or moving them to places where they might be hidden because they didn't have time to burn them before an inspection was to be made by officers of the railroad company. He tes-

tified substantially as follows: "Had removed many crossties; knew how to do the work. It takes two men to move crossties. This is not complicated—just pick it up and carry it, one man in front, one in back. Had done this before. Perryman and I were carrying this tie about mile post 395, north of Rudy three miles. Had carried several ties before on that morning—Perryman in front and I at other end. Carried them various distances. Did not count how many carried; had been doing it about two hours. This crosstie was on west side of track which runs north and south. It was twenty feet from the rails where dump runs out of cut. Was on three-foot bank. Carried it north. Had carried others any place could find to hide them. Don't know how many I had carried. There were four or five in crew besides me. Don't know how far we had come from last pile nor how far to the next one; they were scattered along. Saw Perryman carry the front end with both hands; he started out with the tie, holding hands behind him. This tie was rotten right through center to the end I held. I saw this as we walked along. There wasn't anything to prevent me from watching it. We had walked ten or fifteen yards when he turned loose with one hand; and had not been watching him all the time. Saw him take right hand off and proceed to carry with left hand. He did not move his left hand. I did not walk any, as it jabbed the ground, and the end I carried jabbed me in the pelvis bone. The tie split in two, a half of tie jabbing me. Ties are different sizes. This tie was 7 x 9 inches, and one-half of it was 3½ x 4½. The front end hit the ground. I don't know if it stuck. I held my end. It hit me straight. Had both hands on the tie, with my hands on side. We completed moving the tie; I took one piece, he the other. Continued at work until noon; we had about finished. There were many different things to do. I continued to do whatever I was told. Foreman was about ten feet away. I told him and Perryman, who had picked up his piece. Made no examination to see how bad I was hurt. Did not go to doctor; did not quit work. I worked days that I didn't get paid for."

This selection from the testimony appears to cover completely appellee's theory in detail, insofar as liability may be considered and determined.

The crosstie that split while Perryman and appellee were carrying it, weighed perhaps 250 or 300 pounds, according to some evidence. It, perhaps, did not differ very materially from a large fence post or gate post farmers frequently handle. Before beginning employment with the railroad, appellee had been a farmer.

There is very little of art or skill in moving crossties, but whatever of either was necessary appellee had acquired by his experience. The other principal qualification of such laborer was his strength; "There were no complications," he says. As we understand the witness, the procedure is simple. "Just pick it up and carry it." At the time of the accident Perryman was walking in front with his hands behind him holding the crosstie; the appellee followed. They might have changed places, or they might have walked side by side, each carrying an end. In fact, there seems to be no particular or approved method of carrying a crosstie or similar stick of timber.

It is argued that Perryman took one hand off of the crosstie, and this caused it to split. This is an erroneous deduction. There was no causative force in the mere removal of the hand by either of them. Decay through the center of the timber caused it to split apart. Appellee's knowledge of this condition was as great as that of Perryman. He really had a better opportunity for observation. Perryman did not drop the timber, but a part split off and fell. Neither of the men knew it was going to split and fall, and there is no reason to believe either could have anticipated such a result. At all events, the appellee admitted he was a good laborer. There was no complaint about his work. He had done the usual work of section hands. We are giving his declarations in that respect full credit as a simple statement of fact freed from any taint of boastfulness. His foreman, Hess, tried to induce him to continue working because his services were satisfactory.

He had the maturity of years, the training and experience to equip him for his job. He knew what any other employee knew concerning his employment, particularly that part of it in which he was engaged when injured. Whatever reason there was for Perryman to remove his hand, perhaps, appellee or any other laborer might have done the same thing under the same circumstances. It is conceivable, maybe probable, under the conditions stated either might find greater ease or comfort in his work by shifting the load from one hand to the other. A reaction so natural might have happened, it would seem, with so little conscious effort as not to be remembered at all. In truth, Perryman denied the incident occurred; but we are assuming it did happen. But if so, it was an accident that might have been foreseen by Bryan equally as well as by Perryman.

It seems appropriate at this juncture to quote from one of the recent opinions of this court. "According to the plaintiff's own testimony, his injury was the result of an unfortunate accident for which no one was to blame. It was an unanticipated and unexpected occurrence which no reasonable person would have likely foreseen. It was an unavoidable accident and a complete defense against liability on the part of the defendant." *Booth & Flynn Co.* v. *Pearsall,* 182 Ark. 854, 33 S. W. 2d 404.

In the above cited case, a fellow servant had dropped a block of wood which struck a part of the pipe line, causing a small sliver or scale to fly off striking Pearsall in the eye. There was no doubt about the injury, nor was there any doubt that it was caused by accident rather than by any negligence. This court again quotes from the Pearsall case in *St. L. S. F. Ry. Co.* v. *Burns,* 186 Ark. 921, 56 S. W. 2d 1027, and there said: "It is a matter of ordinary observation that frequently there is some danger attendant upon the most common and ordinary transactions, but the care required is only to provide against such dangers as ought to be foreseen in the light of the attendant circumstances, and the ideal 'prudent person' will, therefore, not neglect what he can foresee

as probable nor divert his attention to the anticipation of events barely possible, but will order his conduct by the measure of what appears likely in the ordinary course of events. *Walloch* v. *Heiden*, 180 Ark. 844, 22 S. W. 2d 1020; *Booth & Flynn Co.* v. *Pearsall, supra; Mo. Pac. Rd. Co.* v. *Medlock*, 183 Ark. 955, 39 S. W. 2d 518; *Mo. Pac. Rd. Co.* v. *Richardson*, 185 Ark. 472, 47 S. W. 2d 794.''

In another case wherein injury was caused by reason of a fellow servant slipping or stumbling, under the facts developed, the results were held purely accidental. It was not due to any negligence, but the slipping or stumbling causing him to release his hold on the car; it was not due to any inattention, disobedience or other misconduct, in the performance of his duty; and, because of that finding, this court held that the trial court should have instructed a verdict for appellant. *Mo. Pac. Rd. Co.* v. *Medlock*, 183 Ark. 955, 39 S. W. 2d 918.

Should anyone, by any view taken of the facts above stated, arrive at a conclusion that Perryman might have been negligent, we think it would be stretching principle rather far to hold, in addition, that the injury should have been anticipated on account thereof.

''It has been frequently stated by this and other courts that in order to warrant a finding that negligence is the proximate cause of an injury it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. *St. Louis, K. & S. E. R. R. Co.* v. *Fultz*, 91 Ark. 260, 120 S. W. 984; *Ultima Thule Ry. Co.* v. *Benton*, 86 Ark. 289, 110 S. W. 1037; *Helena Gas Co.* v. *Rogers*, 104 Ark. 59, 147 S. W. 473; *St. Louis, I. M. & S. Ry. Co.* v. *Copeland*, 113 Ark. 60, 167 S. W. 71; *Miller* v. *M. P. Ry. Co.*, 9 La. App. 477, 121 So. 241; *Meeks* v. *Graysonia, N. & A. R. R. Co.*, 168 Ark. 966, 272 S. W. 360.''

The above quotation is taken from *Mo. Pac. Ry. Co.* v. *Richardson*, 185 Ark. 472, 474, 47 S. W. 2d 794. In another case wherein a servant was injured by having his leg caught between a tree and a wagon frame while

he was engaged in the distribution of gaskets along a pipe line, it was held that his injury was an unavoidable accident. This language was deemed appropriate: "While the accident to appellee was unfortunate, it was not due to the negligence of his master or fellow servants, but was an accident for which no one was to blame. It could not have been foreseen by any reasonable prudence on the part of the master, and was an unfortunate and unexpected occurrence." *Williams Bros. Inc.* v. *Witt,* 184 Ark. 606, 43 S .W. 2d 237.

The same ruling was applied where an experienced log hauler was injured when the wagon he was driving caught on a sapling and threw it against him. *Hickman* v. *Weidman,* 186 Ark. 489, 54 S. W. 2d 291.

In a much more recent case we made this three-line announcement of "The degree of care required of a person is only to provide against such dangers as ought to be foreseen under attending circumstances." *Riley* v. *Motor Express, Inc.,* 193 Ark. 780, 102 S. W. 2d 850. This same declaration was used in the Burns case, *supra.* Another quotation which seems to emphasize the position we have taken in regard to this litigation is: "If the appellee did what a man of ordinary prudence would have done under the circumstances, he was not guilty of negligence. Extraordinary care is not required, nor is the utmost possible caution." *Southwestern G. & E. Co.* v. *Murdock,* 183 Ark. 565, 567, 37 S. W. 2d 100; *Union Sawmill Co.* v. *Hayes,* 192 Ark. 17, 90 S. W. 2d 209.

We have also said there is no liability when the employee's knowledge of the situation and condition equals or surpasses that of the employer. *McEachin* v. *Yarborough,* 189 Ark. 434, 74 S. W. 2d 228; *Mid-Continent Quicksilver Co.* v. *Ashbrook,* 194 Ark. 744, 109 S. W. 2d 448.

The principles of law above announced preclude appellee from recovery. Neither the master nor fellow servant was more negligent than was appellee himself. His own standard of conduct as practiced was the same as Perryman's.

It is, therefore, unnecessary to discuss other interesting questions arising upon this appeal. Were it possible that this case should be tried again it would be proper and perhaps necessary to determine questions arising under the Federal Employers' Liability Act and the rights of the parties as affected thereby. This case has, however, been fully developed and no reason appears for its remand since there is no negligence. The judgment is, therefore, reversed, and the cause is dismissed.