OKLAHOMA GAS & ELECTRIC COMPANY *v.* HOFRICHTER.

4-4998

Opinion delivered April 4, 1938.

*Hill, Fitzhugh & Brizzolara,* for appellants.

*Partain & Agee* and *Paul Wolfe,* for appellees.

SMITH, J. Mrs. Marie Hofrichter recovered a judgment from which is this appeal for the benefit of herself and her infant son to compensate the injuries and damages alleged to have been sustained by the swallowing of a safety pin by the child, a baby nine months old at the time. The verdict was for $10,000 for damages to the child, for $750 for medical attention to it, for $1,250

actual damages to Mrs. Hofrichter, and for $1,250 punitive damages for her benefit.

The evidence tending to support the verdict, stated most favorably, is to the following effect. Mrs. Hofrichter lived in an apartment building owned by her brother, and of which she had charge, and collected the rents from the tenants. Otho Milton was a meter inspector and reader for the appellant gas and electric company. Milton rapped at the back door of the apartment building and curtly advised Mrs. Hofrichter who he was and asked where the meters were located. She gave him the desired information and returned to her bedroom. A noise attracted her to the sleeping porch, where she found Milton. He asked her in an insolent manner who occupied apartment No. 3. She gave him the desired information after calling the occupant of the adjoining apartment. She again returned to her bedroom and placed the baby on the bed and began changing its diaper. While so engaged she was startled by a loud hammering on the door of her bedroom. She answered, "Just a minute, please, I am busy." Milton threw the door open, and in an angry and furious manner inquired, "Who jimmied these meters?" Mrs. Hofrichter answered that she did not know what he meant, that she had been living in the apartment building only about three weeks. Milton demanded that she immediately accompany him to the meters. She protested that she knew nothing about the meters and would not know if he showed them to her. He angrily insisted that she come immediately. She protested and told him she was busy. The baby commenced crying loudly. Milton seized Mrs. Hofrichter by the arm and led her through the screened-in-porch, through the back door and up the stairs between her porch and the adjoining apartment. Miss Holliday, one of the tenants, testified that she heard Mrs. Hofrichter and Milton arguing. There was just a hall between her apartment and that of Mrs. Hofrichter. Miss Holliday said she would attend to the baby, and when she got to Mrs. Hofrichter's apartment Mrs. Hofrichter and Milton were going up the steps to the meters. Miss

Holliday did not hear Milton use any violent or abusive language, but as Mrs. Hofrichter and Milton went up the stairs to the meters Milton had Mrs. Hofrichter by the arm.

When the meter was reached it was apparent that it had been wired around so that the meter did not register the current passing over the wire. It was also apparent that this wiring around the meter had not recently been done. Miss Holliday heard Milton say to Mrs. Hofrichter that it was done prior to the time Mrs. Hofrichter became an occupant of the apartment. Miss Holliday testified that she saw no rudeness on the part of Milton, and he testified that if he did put his hand on Mrs. Hofrichter's arm this was done for the purpose of assisting her to climb the stairs. This controversy of fact was, of course, a question for the jury. The baby was still crying when Mrs. Hofrichter and Milton returned to the bedroom, and Mrs. Hofrichter said the baby had swallowed a safety pin. Milton assisted in the search for the pin. He lifted the baby by its heels, but there was no intimation that this was not done as gently as it could be, and no one doubted the purpose of that action. The pin was not found. Milton asked the telephone number and said he would call back to inquire about the baby, and this he did, but the pin had not been found.

Dr. Freer, the family physician, was called. Mrs. Hofrichter told him she thought the baby had swallowed a safety pin, but the doctor told her the baby couldn't swallow the pin. He testified: "I didn't think or see how the little fellow could have swallowed a pin of that size." Later the baby was taken to the hospital, where an X-ray picture showed the pin in the child's esophagus with the point upward. Dr. Raymond Smith was called, and the pin was removed without the use of an anesthetic, as the baby was too young for its administration.

Dr. Smith did not testify, but the child was kept in the hospital for three days to see if any infection, inflammation or fever developed, and as none did the child was returned to its home apparently as well as ever except for the pain which it had suffered and the irritation

from the instrument used in removing the pin. The irritation disappeared in a few days.

We think, under the facts stated, that a case was made which should be submitted to the jury as to whether Milton committed an assault upon Mrs. Hofrichter by laying hands on her; but we think also this was the only question raised by this testimony. There is no liability, under these facts, for the injury to the baby. Even though it be true, and be found as a fact by the jury, that Milton committed an assault upon Mrs. Hofrichter by laying hands on her, this cannot be said to be the proximate cause of the baby's swallowing the safety pin.

The case of *Rogers* v. *Williard,* 144 Ark. 587, 223 S. W. 15, 11 A. L. R. 1115, and certain other cases, are cited to the effect, that, in the event of a wilful tort the wrongdoer is responsible for the direct and proximate consequences of his act without regard to his intention to produce the particular result, and upon the authority of these cases it is argued that if the assault was a wilful tort the tort-feasor is responsible for the consequences of his act, whether he intended to produce such consequences or not. And so he is. But these consequences, although not intended, must have been the direct and proximate result of the wrongful act, and we do not think it can be said, or that the jury was authorized to find, that laying hands on Mrs. Hofrichter caused the baby to swallow the pin.

In the case of *Rogers* v. *Williard, supra,* the wilful act of the wrongdoer caused an innocent bystander to have a miscarriage, although no such result was contemplated or intended; but here it may be said again that the wilful assault upon Mrs. Hofrichter did not cause the baby to swallow the pin. Had Mrs. Hofrichter had the pin in her mouth when assaulted, and as the result of the assault had swallowed the pin, then the assailant would have been responsible for that result, even though he had not contemplated that result, and had not intended to produce that particular injury.

However wilful one may be he can be held responsible only for results produced by his wilfullness. For those results he is responsible whether he intended them or not.

It is familiar law and of universal application that in order to warrant a finding that negligence is the proximate cause of an injury it must appear that the injury was the natural and probable consequence of the negligence, and that it ought to have been foreseen in the light of the attending circumstances. *Meeks* v. *Graysonia, N. & A. R. Co.,* 168 Ark. 966, 272 S. W. 360.

After so stating the law in § 10 of the chapter on Proximate Cause in 22 R. C. L., p. 123, it is further said: "On the other hand, the cases assuming that the liability for unlawful acts involves the question whether the results complained of are natural and probable are numerous, and seem to justify the conclusion that there is no essential difference between the measure of liability for wilful and negligent torts, and that in both cases the injury complained of must be a natural and direct result."

It follows, therefore, that it was error to submit to the jury the question of liability for the injury to the baby, and the judgment upon that cause of action will be reversed and dismissed, and the case will be remanded for a trial upon the question whether Milton committed an assault upon Mrs. Hofrichter, as it cannot be said that this issue has been concluded by the verdict of the jury inasmuch as the two issues were tried together, and it cannot be known what effect the proof in one case may have had upon the other.