## DUNCAN v. MONTGOMERY WARD & CO.
### No. 10.

District Court, E. D. Arkansas, W. D.
March 29, 1939.

E. H. Coulter and Kenneth Coulter (of Coulter & Coulter), and O. W. P. Wiggins, all of Little Rock, Ark., for plaintiff.

Frank E. Chowning (of Moore, Burrow & Chowning), all of Little Rock, Ark., for defendant.

TRIMBLE, District Judge.

The plaintiff, Luther M. Duncan, brings this action against the Montgomery Ward

& Company, for personal injuries which he alleges he received while in their employ, through the negligence of a fellow servant. There was a trial to a jury and a verdict for the plaintiff. Within apt time the defendant filed a motion for judgment notwithstanding the verdict, and for a new trial in the alternative. The motion was argued orally to the Court and counsel for both parties have submitted well prepared briefs.

The question for consideration in this case is whether or not there is sufficient evidence to sustain the verdict of the jury.

The plaintiff, Luther M. Duncan, was employed as an experienced laborer by the defendant, Montgomery Ward & Company, as a driver of a truck in making deliveries, and was assisted by a fellow servant Jake Jackson. At the time of his alleged injury he was performing the ordinary duties of his employment, that is, they were unloading an ice box from the truck, the approximate weight of this box being estimated by the plaintiff as 350 to 450 pounds, and the actual weight as testified by the defendant's manager as 272 pounds. The truck was backed up to a platform, which was ten or twelve inches lower than the end gate of the truck; the end gate was the width of the bed of the truck, its length being the width of the ice box or thereabouts. When the truck was stopped there the ice box was sitting near the front of the truck from where it was picked up by the plaintiff and his helper, the plaintiff facing and being at the side of the box nearest the end gate, and the helper facing and being at the side of the box nearest the front end of the truck, which necessitated the plaintiff backing and his helper coming forward in carrying the ice box, in such a manner that the ice box was between them and neither could see the other in the moving of the ice box.

The plaintiff testified on direct examination, as follows:

" * * * me and Jake went in there and got the icebox and when I reached down to get it I would say 'all right', and we would always give the signals because that box was between us, and we edged it back to the end gate and I hollered 'Hold it Jake, take it easy; I am stepping down.' And as I stepped down he kind of raised it up a little bit and threw a little weight on me, and I went down, as I was stepping down.

"Q. He tilted the box over towards you? A. Yes, sir.

"Q. It did not fall on you? A. No, sir.

"Q. What did you do then? A. I hollered 'Set it down Jake.' I was going down and I hollered to him to let it down, let the box down, and all, right there.

"Q. Was there anything said there at that time about what happened? A. I told Jake 'I can't do any more; I hurt my back.' "

And on cross examination:

"Q. What you attempted to do was to carry the icebox in one continuous operation from the truck, the front of the truck, on out the back end of the truck, on past the end gate and step down to the floor of the porch while you were carrying the ice box? A. Yes, sir.

\* \* \* \* \* \*

"Q. He (Jake Jackson) did just exactly what you told him to do and always did it willingly and cooperated with you, didn't he? A. Yes, sir.

"Q. Now, there was nobody else on this truck to boss Jake besides yourself at the time you were making these deliveries, was there? A. No, sir.

\* \* \* \* \* \*

"Q. You felt this pain in your back at the moment you stepped down from the end gate to the little porch, didn't you Mr. Duncan? A. Yes, sir.

"Q. And the minute you felt that pain you had to let down the ice box? A. Yes, sir.

\* \* \* \* \* \*

"Q. How high would you say that Jake raised that box at the time that it was tilted over towards you? A. I would not be exact, well, it was something like this, six or eight inches, something like that."

And on redirect examination:

"Q. Was the box tilted over towards you considerably when he raised it? A. Yes, sir."

In addition to this, plaintiff's counsel, in the course of their examination of Dr. Ogden, who was the physician for the plaintiff, propounded to the doctor a lengthy hypothetical question, which question terminated with the following words:

"Q. * * * Then, what would you say, in your opinion, most probably caused the patient's trouble? A. The lifting of the heavy ice box, or strain."

Dr. Ogden had stated in the course of his testimony that his diagnosis of plaintiff's trouble was sciatic neuritis. Then in the course of the cross examination of Dr. Ogden, by defendant's counsel, the following questions were asked him, and the following respective answers given:

"Q. And isn't it possible, Doctor, in these cases that occur from a strain that they might be the result of lifting—just come about in an effort naturally—as a natural result of lifting a heavy object? A. Yes, sir.

"Q. In other words, if a man would go out here and attempt to lift a sack of oats from the floor, he might get a strain in his lumbar region that might result in a severe attack of sciatic neuritis? A. That is right."

In the case of St. Louis-San Francisco Railway Company and Kurn, Trustee, v. Childers, 124 S.W.2d 964, 967, decided by the Supreme Court of Arkansas, on January 16, 1939, that Court said: "The weight of the car was such that one might sprain his back by lifting it, and especially so if he performed that duty in an improper manner. This, we think, is one of the risks of the employment in which appellee was engaged and which he must be held to have assumed."

Giving the testimony its most probative effect and force, I do not think it is sufficient to sustain a verdict for the plaintiff in this case. There is no testimony showing that Jake Jackson was known by the defendant to be incompetent; or that the defendant was negligent in employing him, but on the other hand the testimony of the plaintiff shows that he cooperated at all times previously with the plaintiff.

The plaintiff as an experienced man knew that this position required the lifting of heavy objects, and also knew the likelihood of more weight being thrown on him in stepping down ten or twelve inches and continuing to carry the ice box. While the plaintiff states that Jake Jackson, his helper, raised the box six or eight inches, yet, in as much as the box did not fall on him, the position of the parties, and the stepping down of the plaintiff, makes it more a matter of conjecture with him as to whether the stepping down ten or twelve inches caused more weight to be thrown on him; because if Jake Jackson raised the box six or eight inches and he stepped down ten or twelve inches, it certainly would have thrown the weight of the box

on the plaintiff even more than he has testified. It should be borne in mind these parties could not stand up straight in carrying the box until they reached the end gate, and there is no evidence to show that the raising of this box, if any, was due to negligence on the part of Jake Jackson.

In view of the evidence in this case the Court is of the opinion that the motion of the defendant for a judgment notwithstanding the verdict should be sustained, and the verdict of the jury and judgment of the court thereon set aside, and it appearing to the court that the case was fully developed, a judgment will be entered for the defendant in accordance with the provisions of Rule 50 of the Rules of Civil Procedure in the U. S. District Courts, 28 U.S.C.A. following section 723c. St. Louis, San Francisco R. Co. v. Burns, 186 Ark. 921, 56 S.W.2d 1027; St. Louis-San Francisco Railway Co. v. Bryan, 195 Ark. 350, 112 S.W.2d 641; Missouri Pacific R. Co. v. Vinson, Ark., 118 S.W.2d 672, decided July 4, 1938; St. Louis-San Francisco R. Co. v. Ward, Ark., 124 S.W.2d 975, decided Jan. 16, 1939, and St. Louis-San Francisco Ry. Co. v. Childers, Ark., 124 S.W.2d 964, decided Jan. 16, 1939.