WEATHERFORD *v.* GEORGE.

5-1639                                         317 S. W. 2d 147

Opinion delivered October 27, 1958.

[Rehearing denied November 24, 1958]

*S. Hubert Mayes,* for appellant.

*Langston & Walker,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, Charlie W. George, is a school bus driver, and his wife, Susie George, a teacher. On the morning of November 15, 1956, around 8:30 a.m., George stopped the bus on Highway 10 to pick up school passengers, including appellee, Susie George. Ross Weatherford was driving his Ford pick-up truck east on Highway 10 toward Little Rock, by his statement, "* * * not over 50 miles an hour." It had been raining, and the highway was slick. According to his testimony,[1] he observed the school bus approaching from the opposite direction at least a quarter of a mile away, and knew that it was a school bus. He stated that when the bus stopped and put out the stop sign, he was about 143 feet away; that he applied his brakes, and the truck began to skid. The skidding truck missed the bus, but struck Mrs. George, who was

---

[1] From the testimony: "Well, it was kind of dark and it had been raining back up the road a few miles, but it had slacked up and was still dark, you know, at the time of the accident. It wasn't raining at that time and I saw the bus. I saw the bus coming down the road for at least a quarter of a mile and I knew it was a school bus, but I was driving along there and the school bus wasn't stopped, and the first time— when the bus stopped is when I applied my brakes, and that is the first time I saw the stop sign on the bus.

* * * * *

Q. And then when you saw this stop sign on the bus, what did you do?

A. I applied my brakes.

Q. You applied your brakes and when you applied your brakes, what happened?

A. Well, the back end of the truck flew off the highway on the right hand side. It left the blacktop and it headed right toward the school bus. Well, there was only one thing in my mind, to try to stay out of that school bus and that is what I did."

approaching to board the bus. She received serious injuries. Suit was instituted by the Georges against Weatherford and V. L. Beavers, V. Stackhouse, R. V. Williams, and T. A. Hazard, doing business as V. L. Beavers, Engineers, a partnership, it being alleged that Weatherford was an employee of V. L. Beavers, Engineers, and was acting within the scope of such employment at the time of striking Mrs. George. Weatherford filed a general denial, and Beavers, Stackhouse and Williams, asserting that they were the only members of the partnership,[2] set up in their answer and amendment thereto, that Weatherford was not acting within the scope of his employment, denied all material allegations relative to his alleged negligence, and specifically pleaded unavoidable accident as an affirmative defense. The amended answer asserted that George improperly brought the school bus to a stop, improperly displayed the stop signal, and was improperly parked; that this handling of the bus by George caused Weatherford to be confronted with an emergency, and the latter did what appeared to be proper and reasonable at the time, and under the circumstances. The cause proceeded to trial, and at the conclusion of the evidence, the court *inter alia* instructed the jury that Weatherford was, at the time of striking Mrs. George with the truck, "on business for the defendant in the course of his employment." Six special interrogatories were submitted, and the jury returned its verdict, finding that Weatherford was negligent, and that such negligence was the proximate cause of the injuries and damages; finding that neither Susie George nor Charlie George was guilty of any negligence whatsoever, and awarding damages to Mrs. George in the sum of $25,000 and to Mr. George in the amount of $2,868.06. From the judgment entered against appellants,[3] comes this appeal.

For reversal, three points are urged.

---

[2] The answer alleged that Hazard was not a member, and that the partnership had been erroneously sued. Other motions were made, but are not involved in this appeal.

[3] No judgment was entered against Hazard.

## I.

The Court erred in declaring as a matter of law that Ross Weatherford, Jr., was at the time of the accident, the agent, servant and employee of the appellant, V. L. Beavers, Engineers, and was acting in the course of his employment. This error was committed by the giving of Appellees' Instruction No. 5 and refusing to give Appellants' Requested Instructions No. 6 and No. 12.

## II.

The Court erred in refusing to give Appellants' Requested Instruction No. 11.

## III.

The Court erred in refusing to give Appellants' Requested Instruction No. 13.

We proceed to a discussion of each point in the order listed.

## I.

The only evidence included in the transcript consists of the answers given to interrogatories propounded to R. V. Williams and Ross Weatherford, and the oral testimony of Weatherford. Appellees' Instruction No. 5, objected to by appellants, reads as follows:

"You are instructed that the liability of the defendants, V. L. Beavers, V. Stackhouse and R. V. Williams, doing business as V. L. Beavers, Engineers, is based upon the rule that an employer is liable for the actionable negligence, if any, of its employee, Ross Weatherford, causing injuries and damages, if any, to the plaintiff, while such employee is in the course of his employment. In this case, the Court tells you that Ross Weatherford was, at the time he struck Mrs. George with his truck, on business for the defendants in the course of his employment. You are further instructed that if you find from a preponderance of the evidence that the negligence, if any, of their employee, Ross Wea-

therford, was the sole proximate cause of the plaintiff's injuries and damages, if any, then you will answer Interrogatory No. 1 in the affirmative and Interrogatories No. 3 and No. 5 in the negative."

Appellants' Requested Instructions No. 6 and No. 12, refused by the Court, are as follows:

"You are instructed that the plaintiffs seek to recover against the defendant, V. L. Beavers, Engineers, on the allegation that Ross Weatherford was at the time of the accident acting as their agent, servant and employee and within the course of his employment with them. In this connection, you are instructed that the burden of proof is on the plaintiffs to prove these allegations by a preponderance of the evidence."

"You are instructed that the burden of proof is upon the plaintiffs to prove that Ross Weatherford, was at the time of the alleged accident, acting as the agent, servant and employee of the defendant, V. L. Beavers, Engineers, and, further, that he was acting within the scope of his employment."

We are unable to agree with this contention. R. V. Williams, a member of the partnership known as V. L. Beavers, Engineers, in answer to interrogatories, testified that he personally hired Weatherford, and that his employment began at 8:00 a.m. on November 15, 1956. From his testimony:

"4. Did you pay Ross Weatherford for time in your employment for the date of November 15, 1956?

A. Yes.

5. If so, for how many hours of work did you pay Ross Weatherford for work performed on date of November 15, 1956?

A. 8 hours.

6. What work was Ross Weatherford performing for you at approximately 8:30 a.m. on November 15, 1956?

A. He was to meet me at the Highway Department office at 10:00 a.m.

7. Did you pay Ross Weatherford for the use of his truck in your service for the day of November 15, 1956?

A. Yes.

8. Did you hire the truck owned by Ross Weatherford and agree to pay a certain rate per mile to Weatherford for use of the truck?

A. Yes.  8 cents per mile.

9. Did you pay Weatherford for mileage for use of the truck on November 15, 1956, the truck having been used in your service on November 15, 1956?

A. Yes.

10. State whether or nor Weatherford's 1953 Ford pick-up truck was being used in your service and being driven by Weatherford on or about 8:30 a.m. on November 15, 1956?

A. He was going to meet me at the Highway Department at 10:00 a.m.

\* \* \*

15. State whether or not Ross Weatherford was in your employ on November 15, 1956, at approximately 8:30 a.m.

A. His time began at 8:00 a.m., and he was going to meet me at the Highway Department office at Little Rock at 10:00 a.m.

16. State whether or not you, or one of your employees, had instructed Ross Weatherford that his time was to start at 8:00 a.m. on November 15, 1956, and that his mileage for his truck would begin at that time, that Weatherford should drive from Weatherford's home to the State Highway Department in Little Rock, that Weatherford would be paid for mileage on his truck from his home to the highway department?

A. Yes." ·

Weatherford testified that he left his home in Perryville about ten minutes until eight, dropped his young daughter off at school and then started out for Little Rock. Relative to his employment, he testified, in answer to interrogatories propounded to him:

"1. Were you employed by V. L. Beavers, Engineers, on or about November 15, 1956?

A. Yes.

2. It is true that your employment began with V. L. Beavers, d/b/a V. L. Beavers, Engineers, on November 15, 1956, at 8:00 a.m.?

A. Yes.

3. Is it true that you were using your truck in your work for them?

A. Yes. * * *

7. Is it true that you were on the payroll of V. L. Beavers on the morning of November 15, 1956, at approximately 8:30 a.m. when you had a collision in your truck with Mrs. Susie George on Highway No. 10, approximately eight miles west of the Little Rock city limits?

A. Yes.

8. Were you on duty and working for V. L. Beavers at the time you struck Susie George with your truck at about 8:30 a.m. on November 15, 1956, on Highway No. 10 approximately eight miles west of the Little Rock city limits?

A. Yes. * * *

11. At the time of the accident complained of in the complaint on November 15, 1956, at 8:30 a.m., were you working under instructions given you by R. V. Williams who was doing the work for V. L. Beavers on the highways of Arkansas at the time of the accident complained of in the complaint?

A.   Yes.''

There is no testimony that conflicts in any manner with the above evidence, and we are accordingly of the opinion that the court acted properly in giving Instruction No. 5 and in refusing to give Appellants' Requested Instructions No. 6 and No. 12.   As stated in *Mullins* v. *Ritchie Grocer Co.*, 183 Ark. 218, 35 S. W. 2d 1010:

''* * * inference or p r e s u m p t i o n of fact, * * * may be rebutted or overcome by evidence adduced by the defendant during the trial.   Where the evidence * * * is contradictory, the question is one for the jury.   Where the facts are undisputed and uncontradicted, it becomes a question for the court.''

Again, in *Braman and The Gus Blass Co.* v. *Walthall*, 215 Ark. 582, 225 S. W. 2d 342:

''The evidence on behalf of appellees as to publication of the alleged slander appears to be uncontradicted and we have frequently held that it is not necessary to submit to the jury an issue established by undisputed evidence.''

See also *Sutton & Collier* v. *Kesterson*, 199 Ark. 269, 133 S. W. 2d 450.

## II.

Appellants requested the following instruction, which the court refused to give.

''You are instructed that if you find from the evidence in this case that Charlie W. George was guilty of negligence and that such negligence, if any, was the sole proximate cause of this accident and resulting injuries, then your verdict will be for the defendants.''

Whether the failure to so instruct was erroneous, is immaterial under the circumstances in this case.   Appellants' Requested Instruction No. 8 was given, in which the statute relating to the duties and obligations of a school bus driver was quoted, and the jury was told:

"* * * If you find from a preponderance of the evidence in this case that the plaintiff, Charlie W. George violated this Statute, then you are told that such violation, if you find that he did violate the Statute, is *prima facie* evidence of negligence. By *prima facie* evidence of negligence, the Court does not mean that a violation of the Statute, if you find there was a violation, is of itself necessarily sufficient to constitute negligence, but the Court does mean that you should take such violation, if you find there was a violation, into consideration with all the other facts and circumstances of the case in arriving at whether or not the plaintiff, Charlie W. George, was negligent as negligence is defined in these instructions."

The question of negligence on the part of Charlie George was submitted to the jury in Special Interrogatory No. 5, reading as follows:

"Do you find from a preponderance of the evidence that Charlie George was negligent and that such negligence, if any, was a proximate cause of his damages, if any, complained of by him?"

The jury answered this interrogatory "no", and in Interrogatory No. 6:

"Using 100 per cent to represent the total negligence involved, what do you find from a preponderance of the evidence to be the amount of negligence on the part of the following:

Charlie George: 'None' per cent

Ross Weatherford: '100' per cent"

It certainly follows, that if the jury found George guilty of no negligence whatever, they would not have found that negligence on his part was the proximate cause of the mishap. Accordingly, even if the failure to give the instruction was error, the verdict rendered by the jury had the effect of healing or remission.

## III.

Appellants requested that the following instruction be submitted to the jury.

"You are instructed that if you find from a preponderance of the evidence that Ross Weatherford was driving down that highway at a rate of speed not exceeding 50 miles an hour, which is a lawful speed, and he was on his proper side of the road, and that when he applied the brakes to his truck, that his truck then skidded out of control as a result of the condition of the highway, over which he had no control and which he could not have foreseen in the exercise of ordinary care, then you are instructed that Ross Weatherford would not be guilty of negligence in this case and your verdict would be for the defendants."

Without entering into a discussion of whether the instruction was proper or improper (though we have reached the latter conclusion), let it suffice to say that the theory of unavoidable accident, as well as emergency, was clearly submitted to the jury by Appellees' Instruction No. 7, and Appellants' Instructions No. 1 and No. 3.[4] These instructions, together with the others submitted by the court, fairly presented appellants' theory of the cause of the accident.

---

[4] *Appellees' No. 7.* "You are instructed that the term 'unavoidable accident' means an accident which was not due to the negligence of either the driver or of the pedestrian, but was due to a series of events or circumstances not in the control of either the driver or the pedestrian and consequently not the fault of either the driver or the pedestrian."

*Appellants' No. 1.* "You are instructed that if you find from the evidence in this case that the accident was brought about as a result of unavoidable accident, then you will answer Interrogatory No. 1 in the negative."

*Appellants' No. 3.* "You are instructed that when a person is driving a truck and is confronted by an emergency which is brought about without any negligence on his part, then it is the duty of such person to take necessary action to prevent injury to himself or other persons, or damage to property. Although it may appear afterwards that he was mistaken in the action he took and that some other course might or would have been better, if the driver, when confronted with the emergency, was not guilty of negligence in making the decision and taking the course he took, then he would not be liable for a mistake of judgment and would not be liable for any damage to persons or property caused by his actions."

Finding no reversible error, the judgment is affirmed.