INDUSTRIAL FARM HOME GAS CO. *v.* MCDONALD.

5-2605                                    355 S. W. 2d 174

Opinion delivered March 5, 1962.

[Rehearing denied April 9, 1962.]

*Frierson, Walker & Snellgrove,* for appellant.

*John Watkins, W. B. Howard* and *Kirsch, Cathey & Brown,* for appellee.

CARLETON HARRIS, Chief Justice. Ronald McDonald, appellee, a minor, was injured in a collision, between a pickup truck, driven by appellee, and a butane gas delivery truck, owned by appellant, Industrial Farm Home Gas Company, and driven by its employee, James Gathings. The collision took place on a rural road in Greene County in March, 1960, during a time when snow and ice covered the area. The impact occurred at the top of a hill where there is a right angle turn creating a blind curve. The gas truck was proceeding uphill in a westerly direction,[1] and McDonald, 15 years of age, was approaching the curve from the north. The road, covered with snow and ice, and according to the testimony, extremely slick and dangerous, ran through a deep cut, so that the vision of each party was obscured. According to McDonald, he approached the curve at a speed of about 15 miles per hour, and according to Gathings, he (Gathings) approached at a speed of approximately five miles per hour. Admittedly, both operators were driving slowly, and, according to the testimony of each, were about 25 feet apart before they observed each other. It appears from the evidence that this distance was the approximate limit of visibility, and neither could have observed the other earlier. When the drivers came into view, McDonald applied his brakes, and his truck began to skid, striking the gas truck a few inches behind the left headlight, and the left fender of appellee's truck striking the left fender of appellant's truck. According to the boy, he had gotten over to the right as far as he could go, and the gas truck was in the middle of the road at the time of the collision. McDonald was unable to say whether any part of his vehicle was across the center of the road. Gathings testified that he had gotten to his right as far as possible, and denied that he was in the center of the roadway. One thing is evident; the road (which was just a dirt, country road, with a little gravel on it) was quite narrow. No one testified as to its width, but photographs

---

[1] After making the curve, this truck would have been proceeding north.

in the record establish its narrowness probably no wider than to permit two vehicles to barely pass.

Suit for personal injuries was instituted against appellant by Gladys McDonald, mother and next friend of the minor, Ronald. Appellant answered, denied negligence, pleaded contributory negligence, and asserted that the negligence of Ronald McDonald exceeded that of appellant; a counterclaim was filed seeking damages to the gas truck in the amount of $175. A third party complaint was filed against A. C. McDonald, Ronald's father, alleging that the former was the owner of the truck, and that he was negligent in trusting the vehicle to his son, who was only 15 years of age. Judgment was sought against the father in the amount of $175. The third party defendant subsequently moved to strike so much of the third party complaint as sought relief under the provisions of the Arkansas Contribution Among Tortfeasors Act, and the motion was granted. The cause proceeded to trial, and after the taking of evidence, was submitted to the jury on interrogatories. The jury found both McDonald and appellant's driver, Gathings, to be negligent, establishing Gathings' negligence at 60%, and McDonald's at 40%. Damages to McDonald were fixed at $7,000. Judgment against appellant was accordingly entered by the Court in the amount of $4,200 and costs, and the cause dismissed as to A. C. McDonald. From the judgment so entered, appellant brings this appeal. For reversal, several points are urged, and we proceed to a discussion of same.

## I.

"The Court erred by informing the jury of the effect of answers to interrogatories on liability of appellant."

The Court submitted the case to the jury upon interrogatories in the customary form, No. 1, inquiring if they found Gathings guilty of negligence; No. 2, if they found Ronald McDonald guilty of negligence; and No. 3 (if the answer to both questions was "yes"), the percentage of

fault attributable to each. As previously stated, the jury prorated the negligence as 60% to Gathings and 40% to McDonald. After the jury had retired, they subsequently returned to the courtroom and asked the Court a question. The Court answered that question, and the record then reflects the following:

"Foreman of Jury: Another question, in making this on a percentage basis, if, on account of the boy's injuries, do we include, stipulate the damage done to the boy?

The Court: You determine that, what you feel the weight of the evidence establishes is his damages, what you feel the total compensation should be.

The Court: Do you have another question?

Foreman of Jury: We want to know, too, if we make this settlement on a percentage basis, the hospital bills we have a record of here, is that going to be on a percentage basis or do we make it in full?

The Court: Let me give you an example, perhaps I might clarify this in an example. I am not using the facts in this case at all. Going to use, say 'A' and 'B', who become involved in charges and countercharges of negligence as against each other, each claims to have been damaged. In my example, let us assume the jury says 'A' is 25 percent at fault and 'B' is 75 percent at fault. The jury found, in response to interrogatories, after it made that determination of 25 and 75 percent, as indicated by the interrogatories, since 'B' is 75 percent at fault, which is more than 50 percent, he is not entitled to recover anything, having contributed most of the fault causing the damages. 'A', if the jury finds his damages as established, say for example, to be $100.00, then the total amount of his recovery against 'B' would be $100.00 less 25 percent, which is a deduction made becaue he contributed 25 percent of the fault that brought about the particular injuries to himself.

(Note: Short conference at Bar of Court.)

The Court: At the request of counsel, in the event— go back to my example of 'A' and 'B'. In the event the jury found 'A' 50 percent at fault and 'B' 50 percent at fault, in that event, since they are equally at fault, neither can recover against the other any damages and it would not be necessary to make any calculation as to damages.

The Court: Any other question.

(Note: The jury again retired to consider case.)

Mr. Walker: The defendant objects to the Court's explanation insofar as the Court undertook to explain to the jury the effect of a finding of negligence in diminution of the damages by showing the result which would follow from a certain percentage of negligence, on the ground that this example tends to inflame the jury and prejudice them to establish a result which would not follow from a fair, unbiased answer to the interrogatories.

Mr. Howard: Let the record show, the objection was made after the jury retired, counsel stood mute at the time that the Court was instructing the jury.

Mr. Burris: The third party defendant concurs in the objection and adopts the objection of the defendant.''

Appellant vigorously argues that the Court committed reversible error by informing the jury of the effect of answers to interrogatories. The case of *Wright* v. *Covey,* 233 Ark. 798, 349 S. W. 2d 344, is relied upon in support of this contention. In that case, we held that no error was committed because the information given the jury was already known by them, but appellant says that in the matter before us, it is obvious the jury did not already know, nor understand, the effect of the interrogatories. Quoting from its brief:

''It is obvious that the jury did not already know what the Court told them in detail and with illustrations

as to how their answers to interrogatories would determine the ultimate outcome of the case. The jury clearly did not understand the effect of the interrogatories or even how they were used and it was quite obvious that they desired to decide the merits of the matter by a general verdict according to their own notions of right and wrong. The effect of the Court's explanation was to afford them the means of determining how to make certain that the plaintiff prevailed, even though they apparently were not convinced that such a result would follow by simple and direct answers to the plain interrogatories which were addressed to them.''

Appellant further states:

''Thus, the Court followed exactly the practice which was condemned in *Wright* v. *Covey*, 233 Ark. 798, at 801, 349 S. W. 2d 344, where the Court made the following statement:

'The appellants rely upon the rule, often announced in other jurisdictions, which prohibits a trial court, in submitting a case upon special interrogatories, from informing the jury of the effect that their answers may have upon the ultimate liability of the parties. *Mitchell* v. *Perkins*, 334 Mich. 192, 54 N. W. 2d 293; *Grasso* v. *Cannonball Motor Freight Lines*, 125 Tex. 154, 81 S. W. 2d 482; *Anderson* v. *Seelow*, 224 Wis. 230, 271 N. W. 844. The reason for the rule is that the special interrogatories are intended to elicit the jury's unbiased judgment upon the issues of fact, and this purpose might be frustrated if the jurors are in a position to frame their answers with a conscious desire to aid one side or the other.'' We are unable to consider this contention for no proper objection was made. Appellant's objection does not go to the fact that the Court's statement informed the jury of the effect their answers would have on the ultimate liability of the parties; rather, the objection is that the Court's explanation ''tends to inflame the jury and prejudice them.'' We find nothing in the Court's statement that could be considered inflammatory, nor anything

that could possibly have aroused prejudice; in fact, appellant's own argument in the brief, heretofore quoted, is indicative of the fact that it recognizes that if any prejudice existed, it was present before the questions were asked. Since no proper objection was made, it becomes unnecessary to consider either whether the objection was made too late,[2] or if appellant should have gone farther and moved for a mistrial.

## II.

"The Court erred in overruling appellant's objection to testimony of appellee's witness, Varvil, as to conversation with appellant's insurance adjuster."

Johnny Varvil, a friend of McDonalds, was following McDonald in another vehicle at the time of the collision. Varvil testified that McDonald had pulled out of the ruts on the right side of the road prior to the collision; that he did not see the McDonald car skid prior to the collision, and did not see the gas truck prior to the collision. On cross-examination, the witness was interrogated about a written statement which he admitted signing; this statement related that Varvil had said that both trucks were in the middle of the road, and that the McDonald truck was skidding and hit the gas truck.[3] The witness denied saying that both trucks were in the middle of the road. On re-direct examination, counsel for appellee stated, "Will you tell the jury, please, who, according to your best recollection, it was who took the statement?" The answer from the witness was, "I believe, it was the insurance man." Appellant moved for a mistrial, which was overruled. The witness stated that the insurance man was representing the IFH Butane Company. Several references are thereafter made to the insurance adjuster. Appellant strongly urges that the injection of insurance into the testimony was highly

[2] The objection was not made until the jury left the courtroom.

[3] Subsequently, on re-direct examination, Varvil admitted that the statement was offered to him to read before he signed, but the witness testified that he could not read the writing, but was ashamed to admit it. "Seemed kinda funny to him, I couldn't read his handwriting."

prejudicial and justified a mistrial being declared. We do not agree. Our rule is that the injection of insurance coverage (to be proper) must be relevant and pertinent to some issue in the case. Let it be borne in mind that this written, signed, statement was introduced by appellant as an effort to impeach Varvil's testimony. In *Murray* v. *Jackson,* 180 Ark. 1144, 24 S. W. 2d 960, this Court said:

"The next assignment of error relates to the admission of testimony for the plaintiff Mrs. Jackson. It had been shown in behalf of Mrs. Jackson that her injuries were permanent, and that it was necessary to keep her in the hospital for some time with special nurses and a physician attending her daily. The hospital, nurses' and physician's bills amounted to something over $1,700. The defendant then introduced a physician as a witness who testified that he examined Mrs. Jackson at the hospital, that she could walk about while there, that it was not necessary to keep her there for so long, and that her injuries were not permanent. On cross-examination counsel for the plaintiff asked for whom he made the examination, and he replied that he did not remember, but believed that it was for an insurance company, and stated further that the Southern Insurance Company asked him to make a report on the case.

A reversal of the judgment was asked on account of the admission of this testimony. The claim is made that the cross-examination of the witness as to who employed him was made for the purpose of showing that an insurance company was in reality defending the case, and that the cross-examination of the witness brought the case within the rule announced in *Pekin Stave & Manufacturing Co.* v. *Ramey,* 104 Ark. 1, 147 S. W. 83. We do not agree with counsel in this contention. The testimony of the physician introduced by the defendant tended to contradict the testimony of the physician introduced by Mrs. Jackson as to the character and extent of her injuries and as to the necessity of expending the money that was expended for her for hospital bills and attendance by

nurses and a physician. The cross-examination was proper for the purpose of impeaching or contradicting the witness. The jury might have found that the employment of the physician made him biased in favor of the defendant, or at least tended to show the interest of the witness in the case.''

This is in accord with the general rule, which is expressed in 4 A. L. R. 2d, § 9, p. 782, under the title, ''Showing of Liability Insurance'', as follows:

''As a general rule, where a previously written statement is produced in court and used for the purpose of impeaching plaintiff or one of his witnesses, it is proper for plaintiff's counsel to show that the person procuring such statement was a representative of defendant's insurance company.''

It thus appears that when a witness is asked about a statement, previously given, and he denies making some of the remarks appearing in the writing, opposing counsel may then show who wrote the account as a matter of permitting the jury to determine whether the person who took the statement had any possible bias or interest in the matter. Therefore, if a defendant desires to impeach the testimony of a witness by interrogating him relative to a statement taken by an insurance company representative, he must be prepared for the jury to know that insurance is involved.

### III.

''The Court erred in refusing appellant's instruction on inevitable accident.''

Appellant requested the following instruction, which was refused over its objection and exceptions:

''If you find from the evidence in this case that the collision was caused solely by conditions of weather or of the road, or any other conditions beyond the control of either driver, without negligence on the part of either

driver, then the collision would be an unavoidable accident which neither party would be liable, and, if you should so find, you should answer the interrogatories in this case that neither party was negligent.''

After thorough study, we have reached the conclusion that this point contains merit. There are quite a number of cases involving this question, in some of which we held the instruction proper, and contrariwise in the others. Really, whether such an instruction is justified depends upon the facts in evidence in each particular case. In *St. Louis-San Francisco Ry. Co.* v. *Bryan*, 195 Ark. 350, 112 S. W. 2d 641, we said:

''It has been frequently stated by this and other courts that in order to warrant a finding that negligence is the proximate cause of an injury it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. Appellee cites the cases of *Bennett* v. *Staten*, 229 Ark. 47, 313 S. W. 2d 232, and *Sullivan* v. *Fanestiel*, 229 Ark. 662, 317 S. W. 2d 713, as authority for the fact that the instruction was properly refused. However, a reading of the opinions, as well as the transcripts, of those cases, reflects notable differences from the case at bar. In the *Bennett* case, this Court said that the facts did not warrant such an instruction, and we quoted from an earlier case with the comment that the statement equally applied in *Bennett*, as follows: ''Moreover, there is no evidence in the record tending to show an unavoidable accident.'' In the *Sullivan* case, we upheld the trial court in refusing to instruct the jury relative to unavoidable accident, and commented that the collision was certainly caused by somebody's negligence. There, also, both parties contended and testified that the collision was the fault of the other. This is not the situation before us. Neither the *Bennett* nor *Sullivan* cases related to situations involving unusual weather conditions, and more than that, the testimony was completely different. For instance, during the examination of McDonald, the question was

asked, "How wide was the curve in the narrow part of it there?" Appellee answered, "Wasn't very wide." "Wasn't?" "I don't think room for the gas truck and my truck to pass." Subsequently, McDonald stated that he put on his brakes and slid, and did not slide to the other side. "Q. You say you were on the right-hand side, he was on the left-hand side coming around the curve, you got over and hit him? A. I couldn'ta missed him. Q. You couldn't miss him? A. No, sir." Gathings, appellant's truck driver, stated, "As near as humanly possible, it was an unavoidable accident." Accordingly, we have both parties making statements that certainly bring into issue the question of whether the collision was an unavoidable accident. In fact, the quoted testimony of the two principals, together with the testimony about the weather conditions, and the admitted slow speed of each vehicle, was sufficient to warrant the giving of the instruction. Appellee states that the jury's finding of negligence has the effect of rendering this question moot; however, we do not agree; we do not know what view the jury might have taken had it been instructed on inevitable accident, for the evidence was sufficient to have sustained such a finding. Really, it is difficult to visualize a case where the instruction would be more proper than in the case at bar; in fact, the strongest evidence of negligence on the part of appellant's driver was his failure to sound his horn as he entered the curve. We are of the opinion that appellant was entitled to have this instruction given, and the court committed reversible error in failing to comply with the request.

It is also urged that the court committed error in refusing to permit appellant to prove by the witness Varvil that McDonald had previously made a statement to Varvil that contradicted testimony given on the witness stand by appellee. Without entering into a detailed discussion of this point, suffice it to say that we find no error, since appellant had not laid the proper foundation (for asking Varvil the question) while McDonald himself was on the stand.

For the error herein indicated, the judgment is reversed, and the cause remanded.

McFADDIN & JOHNSON, JJ., dissent.

ED. F. McFADDIN, Associate Justice, dissenting. As I understand the Majority Opinion the judgment of the Trial Court is reversed solely because the Court refused to give the instruction requested by the appellant on unavoidable or inevitable accident, as copied in the Majority Opinion. Conceding, without admitting, that the instruction was properly worded, nevertheless I insist that the Trial Court was correct in refusing this instruction because the driver of the appellant's truck admitted that he failed to sound his horn as required by law. The violation of traffic laws directly connected with the mishap is always evidence of negligence. *Mays* v. *Ritchie Grocer Co.*, 177 Ark. 35, 5 S. W. 2d 728; *Browder* v. *St. L. SW. Ry. Co.*, 221 Ark. 773, 256 S. W. 2d 333. James Gathings, who was driving appellant's truck at the time of the collision, admitted: "I was approaching a blind 90-degree curve . . . Just as I turned the 90-degree turn and topped the hill I met Mr. McDonald coming south . . . didn't sound my horn before I went into the curve. It hasn't been my practise to do that . . . I didn't know at that time it was prudent going into a blind situation to sound my horn. I didn't know that was the law. I didn't know it was the prudent thing to do. It never occurred to me. I did not sound my horn going into the curve. I knew it was narrow and dangerous there . . ."

These admissions by the driver of the appellant's vehicle fairly admit the violation of § 75-653 Ark. Stats., which reads:

"The driver of a motor vehicle traveling through defiles or canyons or on mountain highways shall hold such motor vehicle under control and as near the right-hand edge of the highway as reasonably possible, and, upon approaching any curve where the view is obstructed, within a distance of 200 feet along the highway.

shall give audible warning with the horn of such motor vehicle."

When the driver of the Gas Company truck admitted violation of the traffic law directly connected with the mishap, then the truck owner was not entitled to an instruction on unavoidable accident. It is only when all parties deny negligence that an instruction should be given on unavoidable accident. In *Taggart* v. *Scott*, 193 Ark. 930, 104 S. W. 2d 816, this Court approved the following instruction on unavoidable accident:

"The court instructs the jury that if they believe from the evidence that the injuries, if any, sustained by the plaintiff were a result of a mere accident, that is, without negligence of any one, then your verdict will be for the defendant."

Mr. Justice Humphreys stated why the said instruction should have been given in that case:

"Appellant claimed she was not negligent. Likewise, appellee claimed he was not negligent. If neither was to blame, the collision was necessarily an accident, and it would have been error not to give this instruction. It was so decided in the case of *Morgan* v. *Cockrell*, 173 Ark. 910, 294 S. W. 44."

Under the holding in *Taggart* v. *Scott* it is proper to give an instruction on unavoidable accident only when both plaintiff and defendant deny negligence. The admission of a violation of the traffic laws is certainly admission of facts from which the jury could find negligence. So the requested instruction in this case should not have been given.

In Am. Jur. Vol. 5, p. 939, "Automobiles" § 1100, the holdings are summarized in this language:

"The giving of an instruction that if the injury complained of was the result of mere accident or misadventure, without the fault of anyone, the plaintiff cannot

recover, is proper only where there is something in the record tending to show that the casualty resulted from some unknown cause, and is improper where it resulted from known actions of known persons and things, . . .''

In Blashfield's Cyclopedia of Automobile Law, vol. 1 § 635, in discussing unavoidable accidents, the text reads:

''A mere accident being one in which neither party is at fault, the mere fact that neither driver of two automobiles colliding with each other saw the other until too late to avoid the collision is not enough to show that the accident was unavoidable, since in such a case the negligence, if any, producing the situation, determines the liability, so that if either party can avoid an accident by the exercise of proper care it cannot be said to be unavoidable.''

In 65 A. L. R. 2d 12 there is an exhaustive annotation entitled, ''Instructions on unavoidable accident or the like in motor vehicle cases.'' In that article the propriety of unavoidable accident instructions is considered in great detail. In Paragraph 3 of the annotation, Arkansas is listed as one of the States in which such an instruction is proper in certain cases; but I find no case which holds that the instruction is proper when the defendant has admitted violation of the traffic rules directly connected with the collision.

I maintain that the Trial Court was correct in refusing the instruction on unavoidable accident in this case; and therefore I respectfully dissent.

Jim Johnson, Associate Justice, dissenting. I dissent. In my opinion the majority is this day doing violence to the established law on harmless error.

From at least as early as 1887 with the decision in *Hames* v. *Harris,* 50 Ark. 68, 6 S. W. 233, and as late as 1958 in *Weatherford* v. *George,* 229 Ark. 536, 317 S. W. 2d 147, this Court has consistently held that an error

which does no prejudice to the complaining party is harmless and that such an error is not ground for reversal. In *Weatherford* v. *George, supra,* this Court made it abundantly clear that a failure to give a proper instruction is immaterial where the interrogatories and the jury's answers thereto show that the matter covered by the requested instruction was actually decided by the jury. There is no valid distinction between the holding in *Weatherford* and that in the case at bar. In the cited case, the defendants requested an instruction to the effect that there could be no recovery if one of the plaintiffs was guilty of negligence which was the sole proximate cause of the accident and resulting injuries. The requested instruction was refused. However, this Court pointed out that the question of negligence was fairly submitted by interrogatories numbered 5 and 6. Interrogatory No. 5 read:

"Do you find from a preponderance of the evidence that Charlie George (the plaintiff mentioned in the requested instruction) was negligent and that such negligence, if any, was a proximate cause of his damages, if any, complained of by him?" (parenthesis supplied).

The jury answered this interrogatory "no".

Interrogatory No. 6 read:

"Using 100% to represent the total negligence involved, what do you find from a preponderance of the evidence to be the amount of negligence on the part of the following:

"Charlie George:      'none %'

"Russ Weatherford:    '100%' "

After setting forth the quoted interrogatories, this Court said:

*"It certainly follows that if the jury found George guilty of no negligence whatever they would not have found that negligence on his part was the proximate cause of the mishap. Accordingly, even if the failure to*

*give the instruction was error, the verdict rendered by the jury had the effect of healing or remission."*

In the case at bar the term "negligence" was fully and correctly defined in Court's Instruction No. 2 and the term "proximate cause" was properly defined in Court's Instruction No. 3. The trial court submitted the instant case to the jury upon interrogatories.

Interrogatory No. 1 read:

"Do you find from a preponderance of the evidence that James Gathings (appellant's admitted servant) was negligent and that such negligence caused or contributed to cause the collision herein?" (parenthesis supplied).

Interrogatory No. 1 was answered "yes".

Interrogatory No. 2 was a verbatim copy of Interrogatory No. 1 except it inquired as to Ronnie McDonald's negligence.

Interrogatory No. 2 was answered "yes".

Interrogatory No. 3 read:

"What do you find is the proportion of fault, expressed in percentages totaling 100%, attributable to James Gathings and Ronnie McDonald, is a cause of the collision?"

"James Gathings        '60%'

"Ronnie McDonald      '40%' "

Thus, we see that the matter of the negligence of both parties and the percentage of such negligence was fully and fairly submitted to and passed upon by the jury just as in the *Weatherford* case. The majority says: "We do not know what view the jury might have taken had it been instructed on inevitable accident." I submit that the jury did pass on this issue and their view on the matter is obvious.

The only possible distinction between *Weatherford* and the case at bar is that in the cited case the court refused to instruct on negligence whereas here the court

refused to instruct on unavoidable accident. This, of course, is a distinction without a difference. *It is inescapable that before a jury can find a person guilty of negligence they must first find that the collision was not unavoidable.*

To find negligence under the definition in this case, it was necessary for the jury to find that the parties failed to exercise that degree of care which is used by ordinary prudent persons under the same or similar circumstances. *Had the jury found that defendant's servant Gathings exercised ordinary care, then their answer to Interrogatory No. 1 would have been "no". This would, of course, have been a finding that so far as the defendant was concerned the accident was unavoidable. The same thing may be said as to the jury's finding on the negligence of the plaintiff.*

To paraphrase Weatherford: *It certainly follows that if the jury found both parties guilty of negligence, they would not have found that the mishap was unavoidable.*

As the Court said in *Hames v. Harris, supra,* "His injury by the court's charge is therefore not real but imaginary, even if his theory of the law is right."

We have seen that the issue of unavoidable accident was necessarily determined by the jury in making its determination as to negligence. If the issue was determined then certainly it was submitted in Interrogatories No. 1 and 2. There is no virtue in having the jury instructed in phraseology selected by the appellant rather than that selected by the court provided that the issue was presented. In *Ratton v. Busby,* 230 Ark. 667, 326 S. W. 2d 889, we held that it was not necessary to give the converse or negative of a proposition and cited 88 C. J. S. "Trial" § 303, p. 820. In *Ratton,* we said:

"Where the law has been clearly and adequately stated in a positive manner, ordinarily the Court need not instruct in a negative form."

Having submitted the issue as to negligence, it was not incumbent on the trial court to submit the negative which was unavoidable accident.

One other illustration should make it absolutely clear that there was no prejudicial reror in refusing the appellant's requested instruction. Under the interrogatories submitted, the jury could have found that the negligence of each party was zero. *Had the jury so found what would this be other than a finding of unavoidable accident?*

Under the "general verdict" practice, it might be error to refuse to instruct in a proper case upon "unavoidable accident". However, where a case is submitted to the jury on interrogatories, such as those in the case at bar, such an instruction is absolutely superfluous. Of course it would be proper in any case to instruct that the mere happening of an accident creates no presumption of negligence. However, the appellant did not request such an instruction and the instruction which it did request cannot be tortured into an instruction on no presumption of negligence.

It would unduly extend this opinion to minutely analyze the host of cases holding errors such as that in the case at bar to be harmless. Suffice it to say that *Arkansas Lumber Company* v. *Wallace,* 99 Ark. 537, 139 S. W. 534, presents a striking parallel to the case at bar. In that case it was held that failure to give an instruction that defendant was not liable if plaintiff's injuries resulted from an accident which the defendant could not foresee in the light of attending circumstances was not error where all instructions given made it essential that plaintiff prove his injuries were proximately caused by the defendant's negligence.

An excellent discussion of "Error Cured by Verdict or Judgment" may be found in 5A, C. J. S. § 1776, pages 1284-1290. Our Court has always followed the general rules there set forth and it grieves me to think

of the Pandora's Box which we now open by turning our back on these rules.

Whether it be said that the jury verdict made the matter moot, or that failure to give the instruction was harmless because of the jury's answers or that the subject matter of the instruction was covered, it boils down to the fact that appellant was not prejudiced by the action of the court. Therefore, to the majority's view to the contrary, I respectfully dissent.