JANNIE CANNOR v. ADELIA COOPER

4687                                    432 S.W. 2d 761

Opinion Delivered October 21, 1968

*Cockrill, Laser, McGehee, Sharp & Boswell* for appellants.

*Hall & Tucker* for appellees.

CARLETON HARRIS, Chief Justice.  This appeal relates to a collision involving five automobiles.  All drivers, and two passengers in two of the vehicles[1] are parties to this litigation.  The proof reflects that this accident happened on January 18, 1966, early in the morning, before sun-up, on the Saline River Relief Bridge on Interstate Highway No. 30, just south of Benton.  The collisions occurred as a reult of all drivers involved partly losing control of the cars they were

---

[1]There were other passengers in some of the cars, but only two are parties to this litigation.

respectively driving when ice was encountered on this bridge. The action was instituted by Geraldine Mills, driver of one of the automobiles, and Adelia Cooper, mother of Mrs. Mills, who was a passenger in the Mills vehicle. Four ladies, all drivers of other vehicles involved, were named as defendants. The complaint alleges:

"On January 18, 1966, plaintiff, Adelia Cooper, was riding as a passenger in a vehicle driven by plaintiff, Geraldine Mills, traveling North on Interstate Highway No. 30. Each of the defendants were also traveling North on the same highway. Defendant, Jannie Cannor, lost control of her vehicle and skidded into a bridge rail then collided with the vehicle driven by defendant, Bernice Beck. The vehicle in which plaintiff, Adelia Cooper, was a passenger was struck from the rear by a vehicle driven by Alva Ann Hill and was also struck one or more times by the vehicles of the other defendants."

It was asserted that all defendants were individually negligent, and the negligence of each contributed to cause the injuries and damages subsequently set out in the complaint. Thereafter, Mildred Pilcher and her husband, Murl Pilcher, counterclaimed against Mrs. Mills and her mother, and also sued Mrs. Cannor. Bernice Beck and Alva Ann Hill answered, asserting that, as to them, the accident was unavoidable. Jannie Cannor also pleaded unavoidable accident. On trial, the court gave AMI 604, which is an instruction on unavoidable accident, the giving of said instruction being objected to generally and specifically by counsel for appellees Mills and Cooper, and counsel for appellees Mildred and Murl Pilcher. The question of the negligence of each driver was submitted to the jury on interrogatories, and in answer to these interrogatories, the jury (varying from nine to eleven in the several answers) found none of the drivers guilty of negligence which was a proximate cause of the collisions.

Mills and Cooper moved for a new trial, and the court granted this motion, holding that error had been committed in giving the defendants' requested instruction, as follows:

"If you believe from the evidence that the occurrence was an unavoidable accident; that is, one which was not proximately caused by negligence of any party in this case, then you should answer interrogatories 1 through 5 'no'."

From this order granting the new trial, appellants bring this appeal.

The proof indicates that Mrs. Cannor was the first driver to go on the bridge. The second was either appellant Beck or a vehicle driven by an individual not involved in the collision and not a party to this suit. The third vehicle was driven by Mildred Pilcher, the fourth by Geraldine Mills, and the fifth by Alva Ann Hill. Mrs. Cannor, skidded on the ice, struck the bridge and stopped on the right shoulder. She testified that she was traveling 40 to 45 miles an hour when she drove onto the bridge. The car driven by Alva Ann Hill struck the Mills car. Mildred Pilcher testified that she was driving 30 to 40 miles per hour upon entering the bridge. She said that she was struck by the Mills car, and Mrs. Mills testified that she was struck by the Pilcher car, the Hill car, and a brown car, the owner being unknown. Mrs. Mills testified that she was traveling about 40 miles per hour when she drove onto the bridge. Mrs. Beck thought she was hit by Mrs. Pilcher.

Appellants point out that all drivers testified that they had not previously observed any ice at any place before coming onto the bridge in question; that several of these drivers had already traveled over other bridges, and none had difficulties; that there was no evidence of excessive speed, nor evidence of a lack of proper control of the respective vehicles on the part of any

driver until the ice was unexpectedly encountered on the Saline River Relief Bridge. It is forcefully argued that this case is a perfect example of an unavoidable accident, and appellants cite *Industrial Farm Home Gas Company* v. *McDonald*, 234 Ark. 744, 355 S.W. 2d 174. In the first place, the facts in *McDonald* are not in accord with the facts in the instant litigation. There, though the roadway was slick with snow and ice, both vehicle operators were admittedly driving slowly, were only about 25 feet apart when they observed each other, and neither could have seen the other earlier. Not only that, but *both* drivers testified that the accident was unavoidable.

Here, according to the testimony, involved drivers were traveling anywhere from 30 to 45 miles per hour. The bridge was 500 feet long, and the proof showed that there was no precipitation, no fog, nor anything to obscure the view, except that it was still dark enough to use headlights; however, there is no complaint that any car could not be seen, and apparently all had their headlights on, and taillights were burning. In fact, several of the drivers commented on seeing taillights up ahead flashing. The evidence reflected that there was snow in the fields and yards, and the weather, though clear, was very cold. There was further testimony as to signs warning drivers to watch for ice on the bridges.

Also, there is evidence in the record reflecting possible negligence on the part of some of the drivers. For instance, Mrs. Pilcher testified that Mrs. Cannor was crying, and stated that she (Cannor) "felt like she was the cause of all this." Fay Jones, riding in the car with Mrs. Pilcher, testified that Mrs. Mills "come at quite a speed and hit us in the side."

At any rate, we have, in our last several cases which involved this point, held that instruction to be improper, and we reversed four cases because of the giving of it, and in yet another, affirmed the trial court

in setting aside an earlier judgment wherein the instruction had been given.[2]  In *Houston* v. *Adams*, 239 Ark. 346, 389 S.W. 2d 872, the first of these cases, we discussed this instruction at length, pointing out that the defense of unavoidable accident is nothing more than a denial of negligence, or a contention that such negligence was not a proximate cause of the injury complained of; further, that to submit this issue is confusing, in that it suggests that unavoidability is a separate defense, requiring separate consideration by the jury.  In *Lewis* v. *Crockett*, 243 Ark. 377, 420 S.W. 2d 89, we pointed out:

> " * * * After all, in holding that this instruction should not have been given, we are not taking away appellee's defense, for it is his contention that he was not negligent, and before he can be determined to be liable, a jury must find that he was negligent, and that such negligence was a proximate cause of the alleged injuries complained of."

By our decision in this case, we are again reiterating our disapproval of the giving of this instruction in damage suits arising out of automobile collisions, except in most unusual situations.  What is an unusual situation?  This too is commented upon in *Crockett*:

> "Perhaps it should again be emphasized that, since *Houston* v. *Adams, supra,* we have held that an unavoidable accident instruction is only permissible in exceptional situations.  In that case, we mentioned, as an example of an unavoidable accident, a collision occurring because of a driver, with no previous coronary disease, losing control of his car as a result of a sudden heart attack.  Ac-

---

[2]*Houston* v. Adams, 239 Ark. 346, 389 S.W. 2d 872; **Burton** v. **Bingham,** 239 Ark. 436, 389 S.W. 2d 876; **Rhoden, Admr.** v. **Lovelady,** 239 Ark. 1015, 395 S.W. 2d 756; **Oklahoma Tire and Supply** v. **Bass,** 240 Ark. 496, 401 S.W. 2d 35; **Lewis** v. **Crocket,** 243 Ark. 377, 420 S.W. 2d 89.

cidents caused by an 'Act of God' might well be included — but certainly, no such issue is presented here."[3]

We agree that the giving of the instruction in this case was error, and it may well be that the instruction was the basis for the findings of the jury.

Affirmed.

BROWN and FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice.    I dissent because I deem that the instruction on unavoidable accident was properly given under the pleadings and evidence in this case and the granting of a new trial based solely on the giving of this instruction erroneous.

An unavoidable accident is one which is an unanticipated and unexpected occurrence which no reasonable person would likely have foreseen and for which no one is to blame.    *St Louis-San Francisco Ry. Co. v. Bryan,* 195 Ark. 350, 112 S.W. 2d 641.    This court has defined an unavoidable accident in automobile collision cases to be a collision occurring without negligence on the part of either driver.    *Caldwell* v. *McLeod,* 235 Ark. 799, 362 S.W. 2d 436.    It has been held that the instruction on unavoidable accident should be given when there is evidence tending to prove that the injury resulted from some cause other than the negligence of the parties.    *Elmore* v. *Dillard,* 227 Ark. 260, 298 S.W. 2d 338; *Rhoden* v. *Lovelady,* 239 Ark. 1015, 395 S.W. 2d 756. The giving of the instruction is error only where the sole question is whether one or more of the parties is guilty of negligence.    *Houston* v. *Adams,* 239 Ark. 346, 389 S.W. 2d 872; *Burton* v. *Bingham,* 239 Ark.

---

[3]AMI 615 points out that: "A person is not liable to another whose damages were caused solely by an act of God. If an act of God concurs with the negligence of man to proximately cause damages, the negligent person is not excused from liability by the act of God."

436, 389 S.W. 2d 876; *Oklahoma Tire & Supply Co.* v. *Bass,* 240 Ark. 496, 401 S.W. 2d 35.

The case now before us falls in the category of those where there is considerable evidence tending to prove that the series of collisions involved resulted from a cause other than the negligence of any of the parties involved. It does not involve the simple matter of determining which of the parties was negligent. As pointed out in the majority opinion, five automobiles were involved. There were the usual counterclaims and cross complaints. The defense of unavoidable accident was pleaded by several of the parties.

Geraldine Mills, the plaintiff, testified that there was no evidence of snow or ice either on her porch when she left home or on the highway leading up to where the collisions occurred. She first discovered the condition when she applied her brakes, after she saw cars colliding ahead when halfway across the bridge. One of the vehicles involved overtook her at the bridge.

Mrs. Beck, a defendant driver, was on the bridge and about to pull over into the left-hand lane because of seeing the taillights on Mrs. Cannor's automobile flashing, before she noticed there was ice on the bridge. She also was unaware of this condition until she applied her brakes and started skidding. She had traveled for some distance on the highway and noticed nothing to indicate that there would be ice on the bridge.

Mrs. Cannor testified that she had crossed a number of bridges and had seen no signs of ice on the highway before she reached the bridge on which the collisions occurred. She drove onto this bridge and discovered the icy condition when her car started sliding toward her right. She said that as she approached the bridge, it looked like all of the bridges she had previously crossed on which there had been no ice. The same sign warning drivers to watch for ice on bridges

had appeared on the approaches to all the bridges she had previously crossed and on which there was no ice.

Miss Hill did not encounter any icy conditions on the highway before she reached the bridge and did not see any indication of icing on the bridge. When she saw cars ahead of her on the bridge start to slide around, she tapped her brakes. She stated that it came as a complete shock to her when her car started skidding.

Mrs. Cooper, a passenger in the car driven by her daughter, Geraldine Mills, testified that the highway was clear, that there was no ice upon it and that there was no indication of any slick spots until the car in which she was riding started slipping on the bridge.

Mrs. Pilcher, a defendant and counterclaimant, was not even aware that there had been a little snow earlier in the morning. When she was on the bridge she saw a car in front of her also on the bridge and this caused her to tap her brakes. Her car then seemed to go faster. She testified that there was no prior indication to her of any ice on the highway or bridge.

Wesley Youngman was the driver of one of the cars involved in the collisions. Strangely enough, he was not a party to the action. The first time he suspected any trouble was when the lights on Mrs. Beck's car started blinking and the car started sliding back and forth across the center line about 50 feet in front of him.

While there was evidence which would have sustained a finding of negligence on the part of one or some, or perhaps all of the drivers involved, there was ample substantial evidence on which the jury might properly find that the accident was not proximately caused by the negligence of any of the parties, or, in other words, that the injuries involved resulted from

some cause other than the negligence of any of the parties and that the occurrence was one which a reasonable person would not likely have foreseen.

In holding that it was error to refuse the instruction in *Industrial Farm Home Gas Co.* v. *McDonald*, 234 Ark. 744, 355 S.W. 2d 174, we said:

"* * * Accordingly, we have both parties making statements that certainly bring into issue the question of whether the collision was an unavoidable accident. In fact, the quoted testimony of the two principals, together with the testimony about the weather conditions, and the admitted slow speed of each vehicle, was sufficient to warrant the giving of the instruction."

The cases in which it has been held that the instruction was properly refused or erroneously given have been two-party cases, or cases in which there was no evidence to show an unavoidable accident. See *Bennett* v. *Staten*, 229 Ark. 47, 313 S.W. 2d 232; *Sullivan* v. *Fanestiel*, 229 Ark. 662, 317 S.W. 2d 713; *Burton* v. *Bingham*, 239 Ark. 436, 389 S.W. 2d 876; *Houston* v. *Adams*, 239 Ark. 346, 389 S.W. 2d 872; *Rhoden* v. *Lovelady*, 239 Ark. 1015, 395 S.W. 2d 756; *Norman* v. *Gray*, 238 Ark. 617, 383 S.W. 2d 489; *Oklahoma Tire & Supply Co.* v. *Bass*, 240 Ark. 496, 401 S.W. 2d 35. In several of these cases it was specifically pointed out that the incident involved would not have occurred unless someone was negligent. An analysis of our cases leads me to the conclusion that the real basis for holding the instruction inapplicable is that the incident before the court could not have occurred except for some party's negligence, or, stated conversely, evidence indicating that the cause of the incident was unavoidable is absent.

In one of the more recent decisions holding that the refusal of this instruction was not error, both the plead-

ings and the evidence indicated that the accident was caused by the negligence of one or both of the parties and was not inevitable. It was unequivocally stated that it could not have happened without someone having been negligent. *Rhoden* v. *Lovelady, supra.* In discussing the case of *Houston* v. *Adams, supra,* the court there stated that the exceptional circumstances making the instruction permissible exist where the alleged injury resulted from some cause other than the negligence of either party. As demonstrated, there was ample substantial evidence here to support the jury finding that the proximate cause was something other than the negligence of any of the parties to the action. The fact that there would also have been substantial evidence on which to base a contrary finding should be of no consequence. In my opinion, it is not necessary that the facts be such as would warrant a directed verdict on the basis of unavoidable accident to warrant the giving of the instruction.

If this case is not one where the giving of the instruction is warranted, it is difficult to conceive of one where it would be. The situations involving a sudden, unanticipated coronary attack or act of God, suggested in *Lewis* v. *Crockett,* 243 Ark. 377, 420 S.W. 2d 89, are not fundamentally different in principle from defenses asserted here. The principle involved in each factual situation is a contention that there was a proximate cause other than the negligence of any party. This is the very situation mentioned as ''exceptional circumstances'' in the *Rhoden* case.

The instruction was particularly appropriate in a multi-party action such as this, where a jury might well believe, in the absence of such an instruction, that they were required to fix the blame on one or more of the drivers.

I am authorized to state that BROWN, J., joins in this dissent.