JERRY MOORE, SPECIAL ADMINISTRATOR OF THE
ESTATE OF MICHAEL MOORE, DECEASED *v.*
JOHNNY RYE

73-119                                    500 S.W. 2d 751

Opinion delivered November 5, 1973

*Bon McCourtney & Associates,* by: *Troy L. Henry,* for appellant.

*Barrett, Wheatley, Smith & Deacon,* for appellee.

CONLEY BYRD, Justice. This is a wrongful-death action brought by appellant Jerry Moore, Special Administrator of the estate of Michael Moore, deceased, against appellee Johnny Rye. The jury found the issues in favor of Rye, and Moore appeals on the ground that the trial court erred in giving and denying the instructions hereinafter discussed and in overruling objections to testimony elicited on cross-examination.

The record shows that West Second Street in Marked Tree at the intersection with Oak Street is straight and without obstructions along side the road to block the vision of a driver. There are six homes on the east side facing West Second, and on the west side there is one home facing West Second. There are other homes just off Second Street on Oak Street.

Mr. Rye states that he was traveling north on West Second Street and that when he was 50 yards from the house on the west side, he noticed some people standing in the front of the porch. At the same time he also noticed some people sitting on the porch of the Moore house on the east side. He admittedly waved to the people on the west side and after they waved back looked straight ahead down West Second Street. He neither saw the 13 month old Michael Moore standing in the road, nor his mother racing across the yard toward him and did not

know anything had happened until he heard a scream and then a thud. Mr. Rye had previously seen children about 150 yards from the houses where the collision occurred.

Mrs. Phyllis Moore states that when she saw the pickup truck driven by Rye, the decedent was by the ditch. She hollered at the decedent, but by the time she got to the ditch the decedent had climbed up at the side of the road and was struck as he stood up.

Mrs. Mary Lassiter who lived at the house where Gene Herrod was standing testified that as Mr. Rye waved, she saw the Moore baby and hollered, "Watch that baby." In addition to the Moore's three children, Mrs. Lassiter had a thirteen month old child, and another girl living on West Second had three or four children all below school age.

POINT NO. 1. Over the objection of appellant the trial court gave AMI 604 on unavoidable accident. To sustain the trial court appellee argues that because a child of such tender years is not chargeable with negligence and because there was evidence that the mother, not a party, may have been negligent, this instruction was proper. We disagree, and for the reasons set forth in *Houston* v. *Adams*, 239 Ark. 346, 389 S.W. 2d 872 (1965), we hold that the trial court committed reversible error in giving the instruction. See also, *Connor* v. *Cooper*, 245 Ark. 386, 432 S.W. 2d 761 (1968).

POINT NO. 2. The trial court refused to instruct the jury, in accordance with AMI 909, as follows:

"Streets and highways are available for the use of both pedestrians and motorists. The driver of a motor vehicle must anticipate the presence of pedestrians on streets and highways and use ordinary care to avoid injuring them."

Appellee argues that the trial court did not abuse its discretion in refusing this instruction because a thirteen months old baby is not a pedestrian. We hold that the

trial court erred in refusing the instruction. Nothing is more common or accepted as a way of American life than the visiting that takes place between neighbors living along and across the streets in the many cities of this nation.

POINT NO. 3. The proof here shows that the West Second Street was a busy industrial street with a few remaining residences on both sides of the street. Furthermore, the appellee admittedly knew that children habitually played within 150 yards of the point of collision. Under the circumstances we hold that the trial court erred in refusing to instruct the jury, in accordance with the second paragraph of subsection "B" of AMI 901, to the effect that "when the driver sees danger ahead, or it is reasonably apparent if he is keeping a proper lookout then he is required to use ordinary care to have his vehicle under such control as to be able to check its speed or stop it, if necessary, to avoid damage to himself or others." The proof here also shows that both Mary Lassiter and the mother tried to warn appellee of the presence of the baby before it was struck.

POINT NO. 4. The trial court refused to give AMI 605 which provides:

"A person who knows or reasonably should know, that a child may be affected by his act, is required to anticipate the ordinary behavior of children and to use care commensurate with any danger reasonably to be anticipated under the circumstances. A failure to use this degree of care is negligence."

As we understand the record, there is proof that tends to show no reason why appellee did not see the child crawling in the slight ditch along the street before the child stood up on the edge thereof and was struck by appellee's vehicle. Furthermore, since appellee's attention was attracted to the people on the west side of the street, one could logically expect the same conduct to attract the attention of a child living in the homes on the east side of the same street. Under the circumstances we hold that the instruction should have been given.

POINT NO. 5. Appellant on direct had testified that he and the child's mother had been separated some four or five months at the time of the accident. On cross-examination he was interrogated, over objections, with reference to the amount of child support he had contributed during that time and as to the amount of fines he had paid for driving while intoxicated and public drunkeness during the same time. When we consider that to recover for mental anguish one must show that he suffered more than normal grief, we cannot say that the trial court abused its discretion in permitting the evidence to go to the jury. The evidence as to the support of a child or the lack of support would certainly be relevant as to appellant's affection and attitude toward the child during his life time. The testimony as to the amount of fines paid for driving while intoxicated and for public drunkeness would show a source of funds or the ability to raise funds that were not used for support.

The trial court also permitted appellant to be interrogated relative to a divorce suit filed by the mother of the child against him and the service of the summons on him that day. This we hold was error. We fail to see how the filing of the divorce action could have any relevancy to the issue of whether appellant suffered mental anguish as a result of the death of his child.

Reversed and remanded.

FOGLEMAN, J., dissents in part.

JOHN A. FOGLEMAN, Justice, dissenting in part, concurring in part. My dissent is directed to one point only. It seems to me that this case presents one of those exceptional cases in which the unavoidable accident instruction should be given. It was recognized in *Houston* v. *Adams,* 239 Ark. 346, 389 S.W. 2d 872, that there are such cases.

There is testimony from which a jury would be warranted in finding that this unfortunate incident was an unanticipated and unexpected occurrence which no reasonable person would have foreseen and for which

no one is to blame. This, then, would be an unavoidable accident. *St. Louis-San Francisco Ry. Co.* v. *Bryan,* 195 Ark. 350, 112 S.W. 2d 641. Because the infant could not be guilty of negligence, the occurrence could well have been found to have occurred without negligence on the part of either party. This, in my opinion, would bring the facts within the exceptional circumstances which would make the occurrence an unavoidable accident. *Caldwell* v. *McLeod,* 235 Ark. 799, 362 S.W. 2d 436. The instruction should be given when there is evidence *tending* to prove that the injury resulted from some cause other than the negligence of the parties. *Elmore* v. *Dillard,* 227 Ark. 260, 298 S.W. 2d 338; *Rhoden* v. *Lovelady,* 239 Ark. 1015, 395 S.W. 2d 756. If a case, in which the sole proximate cause is the unpredictable and unanticipated action of a child, does not fall into the category of an unavoidable accident, then I doubt that any case can.

Certainly the giving of the instruction would not be error, even if it could be said that its refusal would not have been error. I concur in the opinion as to all other points.